IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 20-2352

(1) BOX ELDER KIDS, LLC;
(2) C C OPEN A, LLC; and
(3) GUEST FAMILY TRUST, by its
Trustee CONSTANCE F. GUEST,
individually and on behalf of themselves
and all others similarly situated,

      Plaintiffs,

vs.

(1) OCCIDENTAL PETROLEUM CORPORATION;
(2) OXY USA, INC.;
(3) ANADARKO PETROLEUM CORPORATION;
(4) ANADARKO E & P ONSHORE, LLC;
(5) ANADARKO LAND CORPORATION; and
(6) KERR-MCGEE OIL AND GAS ONSHORE, LP

      Defendants.

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiffs Box Elder Kids, LLC, a Colorado limited liability company, C C Open A, LLC, a Colorado limited liability company, and the Guest Family Trust, by its Trustee Constance F. Guest (collectively known as "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by and through their attorneys, file their Class Action Complaint against Occidental Petroleum Corporation, Oxy USA, Inc., Anadarko Petroleum Corporation, Anadarko E & P Onshore, LLC; Anadarko Land Corporation, Kerr-McGee Corporation, and Kerr-McGee Oil and Gas Onshore, LP (collectively, "Anadarko")

1

for breach of Surface Owner Agreements ("SOAs") that obligate Anadarko, as successor in interest to Union Pacific Land Resources Company ("Union Pacific"), to pay a percentage of the value of all oil, gas, and associated hydrocarbons produced from lands in Colorado, Wyoming, and Utah that were once owned by Union Pacific, to Plaintiffs, who were and are owners of the surface of the land on which are located the wellheads producing the oil, gas, and associated hydrocarbons. This Complaint refers to the payment due under Section 2 of the SOAs as the "Surface Owner Payment" or the "Payment". In addition, Plaintiffs assert claims for unjust enrichment and fraud, deceit, and constructive fraud. Plaintiffs seek recovery of the full Surface Owner Payments due them, plus interest at the highest rate allowed under the law, plus the opportunity to amend to seek exemplary damages after conducting discovery. In further support, Plaintiffs state and allege as follows:

## JURISDICTION AND VENUE

1.      This Court has personal jurisdiction over Defendants because Occidental Petroleum Corporation ("OPC"), through its affiliates and subsidiaries, including Defendant Oxy USA, Inc. and Defendant Anadarko Petroleum Corporation and their subsidiaries, owns, operates, and maintains significant marketing and midstream assets in Colorado.[1] Through its acquisition of Anadarko Petroleum Corporation and its subsidiaries, OPC is among Colorado's top oil and gas producers with interest in approximately 650,000 net acres, including approximately 2,700 operated vertical wells and 2,000 operated horizontal wells.[2] OPC currently conducts, and has conducted in the past, substantial business activities in the state of Colorado and the acts and conduct giving rise to the claims asserted in this Complaint relate to real property located in and events that transpired in Colorado, Wyoming, and Utah.

---

[1] Occidental Petroleum Corp., Annual Report (Form 10-K), at 5, 21 (Feb. 28, 2020).
[2] *Id.* at 23.

2.      This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are, in the aggregate, more than 100 class members. Minimal diversity of citizenship exists between the parties in that, for purposes of diversity jurisdiction, Defendants are citizens of Texas and Delaware, 28 U.S.C. §1332(c)(1), and, at least one plaintiff is a citizen of a state other than Texas and Delaware. The amount in controversy exceeds $5,000,000 exclusive of interest and costs. Accordingly, there is subject matter jurisdiction under 28 U.S.C. §1332(d).

3.      Venue is proper in this judicial district because Defendants' course of conduct that gave rise to the claims asserted herein occurred, in substantial part, in this judicial district. Additionally, a significant portion of the lands at issue are in Colorado.

## PARTIES

4.      Plaintiffs and the members of the proposed Class are Landowners of many thousands of surface acres lying along the "UP Strip" running through Colorado, Wyoming, and Utah. The UP Strip is so known because it describes the millions of acres of land that the United States government granted to Union Pacific to aid in the construction of a transcontinental railway. Over the years Union Pacific sold the lands within the UP Strip but reserved to itself the mineral rights below the surface of the land. Plaintiffs are Landowners within the UP Strip whose lands are subject to SOAs entered into by them or their predecessors in interest and Union Pacific, the predecessor in interest to Defendants named herein.

5.      Plaintiff Box Elder Kids, LLC, is a Colorado limited liability company in good standing. It is acting through its manager Kerry L. Shaklee. None of its members are citizens of Texas or Delaware. It owns the surface of the NE/4 of Section 25, 2N, 65W in Weld County, Colorado, which is subject to the Surface Owner's Agreement dated November 3,

1989, between Zelda H. Shaklee, a widow, and Union Pacific Resources Company and attached as **Exhibit 1** (the "Shaklee SOA").

6.      Plaintiff C C Open A, LLC, is a Colorado limited liability company in good standing. It is acting through its manager Karen I. Mcgill. None of its members are citizens of Texas or Delaware. It owns the surface of the W/2, W/2SE/4 of Section 25, 2N, 65W in Weld County, Colorado, which is also subject to the Shaklee SOA.

7.      Plaintiff Guest Family Trust is a trust formed under the laws of the State of Colorado. It is acting through its sole Trustee Constance F. Guest, who is a citizen of Colorado, not Texas or Delaware. The Trust owns the surface of the SW/4 of Section 13, 2N, 65W in Weld County, Colorado, which is subject to the Surface Owner's Agreement dated June 20, 1973, between Raymond R. Guest and Constance F. Guest, husband and wife, and Champlin Petroleum Company, the successor in interest to Union Pacific Railroad Company and attached as **Exhibit 2** (the "Guest SOA").

8.      Anadarko owns the mineral estate under Plaintiffs' lands which it typically leases to third party oil and gas lessees, some of whom are affiliates of Defendants, and for which it receives royalties upon the production of oil, gas, and associated hydrocarbons from the lands (a/k/a/ premises) subject to the SOAs.

9.      Anadarko pays and has paid Plaintiff Box Elder Kids, LLC under the SOA that is Exhibit 1.

10.     Anadarko pays and has paid Plaintiff CC Open A, LLC under the SOA that is Exhibit 1.

11.     Anadarko pays and has paid Plaintiff Guest Family Trust under the SOA that is Exhibit 2.

12.     On or about August 8, 2019, OPC and Baseball Merger Sub 1, Inc., a newly formed Delaware corporation and a wholly owned subsidiary of OPC, merged with and into Anadarko Petroleum Corporation ("APC"), a Delaware corporation, with APC continuing as the surviving entity and being a wholly owned subsidiary of OPC.[3] OPC, Baseball Merger Sub 1, Inc., and APC are referred to collectively herein as "Anadarko" unless otherwise identified.

13.     Defendant OPC conducts its operations through its various subsidiaries and affiliates, including Defendant Oxy USA, Inc.[4] Oxy USA, Inc. conducts the exploration and production activities for OPC within the United States, including Colorado and Wyoming.

14.     APC has placed ownership of its mineral rights in Anadarko Land Corporation. When APC operates wells that produce minerals owned by Anadarko Land Corp., operations are generally conducted by Anadarko E&P Onshore, LLC. Anadarko's wholly owned affiliate Defendant Kerr McGee Oil and Gas Onshore, LP ("Kerr-McGee") also operates wells within the UP Strip.

15.     Defendant OPC is a corporation organized under the laws of the state of Delaware with its principal place of business in Texas. For service of process in the state of Colorado, OPC's registered agent is C T Corporation System, 7700 E Arapahoe Rd, Ste 220, Centennial, Colorado 80112-1268.

16.     Defendant Oxy USA, Inc. ("Oxy") is a Delaware corporation with its principal place of business in Texas. It is authorized to do business and is doing business in the state of Colorado. For service of process in the state of Colorado, Oxy's registered agent is C T

---

[3] Occidental Petroleum Corporation, Annual Report (Form 10-K) at 2 (Feb. 28, 2020).
[4] *Id.*

Corporation System, 7700 E Arapahoe Rd, Ste 220, Centennial, Colorado 80112-1268.

17.     Defendant APC is a Delaware corporation with its principal place of business in Texas. It is among the world's largest independent exploration and production companies, with more than 1.5 billion barrels of oil equivalent of proved reserves in the United States on December 31, 2019. For service of process in the state of Colorado, APC's registered agent is C T Corporation System, 7700 E Arapahoe Rd, Ste 220, Centennial, Colorado 80112-1268.

18.     Defendant Anadarko E & P Onshore, LLC (f/k/a/ Anadarko E & P Company, LP, f/k/a RME Petroleum Company, f/k/a/ Union Pacific Resources Company, f/k/a/ Champlin Petroleum Company) ("E&P Onshore") is a limited liability company organized under the laws of the state of Delaware with its principal place of business in Texas. E&P Onshore is a wholly owned subsidiary of APC and is engaged in oil and gas leasing, exploration, and production within the UP Strip. For service of process in the state of Colorado, Anadarko E & P Onshore LLC's registered agent is C T Corporation System, 7700 E Arapahoe Rd, Ste 220, Centennial, Colorado 80112-1268.

19.     Defendant Anadarko Land Corporation (f/k/a RME Land Corp.) ("Land Corp.") is a corporation incorporated under the laws of the state of Delaware, with its principal place of business in Texas. Land Corp. is a wholly owned subsidiary of APC and is engaged in the business of acquiring and holding title to real estate and other interests in real estate, including, inter alia, ownership of mineral rights within the UP Strip. For service of process in the state of Colorado, Anadarko Land Corporation's registered agent is The Corporation Company, 7700 E Arapahoe Rd., Ste. 220, Centennial, CO 80112.

20.     Defendant Kerr-McGee Oil & Gas Onshore, LP ("Kerr-McGee Onshore"), is a limited partnership organized under the laws of the state of Delaware, with its principal

place of business in Texas. Kerr-McGee Onshore is a wholly owned subsidiary of APC and is engaged in oil and gas leasing, exploration, and production within the UP Strip. For service of process in the state of Colorado, Kerr-McGee Oil & Gas Onshore, LP's registered agent is C T Corporation System, 7700 E Arapahoe Rd, Ste 220, Centennial, Colorado 80112-1268.

21.    Defendants OPC, Oxy, APC, E&P Onshore, Land Corp., and Kerr-McGee Onshore are referred to collectively herein as "Anadarko".

## CLASS ALLEGATIONS

22.    Plaintiffs bring this action individually and on behalf of a Class of similarly situated persons and entities ("the Class") consisting of:

> All owners of the surface of the land within the UP Strip (Colorado, Wyoming, and Utah) that is subject to a Surface Owner's Agreement to which Defendants Occidental Petroleum Corporation, Oxy U.S.A., Inc., Anadarko Petroleum Corporation, Anadarko Land Corporation, Anadarko E & P Onshore, LLC, or Kerr-McGee Oil and Gas Onshore, LP is a successor-to the mineral interest(s) once owned by Union Pacific Land Resources Corporation and on which wellheads are located for wells that produce oil and gas from the subsurface beyond the boundaries of the lands (a/k/a premises) covered by the Surface Owner Agreement.

23.    Rule 23 of the Federal Rules of Civil Procedure permits "one or more members of a class" to sue as representative parties on behalf of all members if: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (d) the representative parties will fairly and adequately protect the interests of the class; (e) the court finds that questions of law or fact common to the class members predominate over any questions affecting only individual members; and (f) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Allegations supporting each prerequisite are below.

24.     Numerosity. Just within Colorado, Anadarko has drilled 402 two-mile horizontal wells and numerous one-mile horizontal wells from various surface locations that are subject to roughly 75 SOAs throughout the Wattenberg Field in order to produce oil and gas from RR Minerals. Accordingly, the members of the Class ("Class Members," or collectively the "Class") are so numerous (over 100) that separate joinder of each member of the Class is impractical. Although Plaintiffs do not presently know the exact number and identity of all Class Members, this information is in the possession of Defendants and can be readily provided.

25.     Commonality. Common questions of law and fact exist as to Plaintiffs and the Class Members. These common questions predominate over any questions affecting only individual members of the Class. The common questions include, without limitation, the following:

a.      Whether the standard form SOA entitles Plaintiffs and the Class Members, as the surface owners of lands covered by the SOAs on which wells producing oil, gas, and associated liquid hydrocarbons are located, to a Surface Owner Payment equal to 2 1/2% on the value of all oil, gas, and associated liquid hydrocarbons produced, saved, and marketed therefrom;

b.      Whether Anadarko paid Plaintiffs and the Class Members less than the full Surface Owner Payment by:

1.      reducing the Surface Owner Payment by the fraction of the land included in the SOA divided by the land included in the spacing unit breaches the SOA;

8

2.      reducing the volumes shown on the check detail that accompanies the Surface Owner Payment;

3.      deducting costs from the Surface Owner Payment that Anadarko did not incur or bear;

4.      deducting costs from the Surface Owner Payment that the SOA does not expressly authorize; and

5.      embedding deductions from the Surface Owner Payment within amounts shown on the check detail that accompanies the Surface Owner Payment.

c.      The value of the oil, gas, and liquid hydrocarbons produced from the wells located on the surface of the lands covered by the SOAs.

26.     <u>Typicality.</u> Plaintiffs' claim is typical of the claims of the members of the Class because Plaintiffs are surface owners or successors-in-interest to surface owners who entered a standard form of SOA with Union Pacific before 2001 which entitles them to a Surface Owner Payment. They claim that Anadarko, as successor-in-interest to Union Pacific, has breached the SOA by paying less than the full Surface Owner Payment owed under the SOAs to Plaintiffs and the members of the Class. Plaintiffs, on behalf of themselves and on behalf of the Class, seek to recover money damages from Defendants in the full amount owed plus interest on the amounts owed but not paid. They also assert a common claim for unjust enrichment and fraud, deceit, and constructive fraud given Anadarko's uniform treatment of the Surface Owner Payments due to Plaintiffs and the members of the Class under the standard form SOAs.

27.     <u>Adequacy.</u> Plaintiffs and their undersigned counsel will fairly and adequately

represent and protect the interests of the members of the Class. Plaintiffs are adequate representatives of the respective Class and their interests do not conflict with the interests of the members of the Class whom they seek to represent. Plaintiffs have retained counsel competent and experienced in the prosecution of both class action cases and in the prosecution of cases involving oil and gas interests. Plaintiffs and their attorneys will vigorously prosecute this action for the benefit of the Class.

28.     <u>Predominance.</u> A class action under Rule 23(b)(3) provides a fair and efficient method for adjudicating this controversy. Common questions of law and fact exist as to all members of the Class. These common issues predominate over any questions affecting only individual members of the Class. These common legal and factual issues can be determined without the necessity of the testimony of individual Class members.

29.     <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class Member's claim is impractical. It would be unduly burdensome to this Court to have individual litigation of numerous individual claims in separate lawsuits, every one of which would present the same questions of law or fact that are presented in this lawsuit. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action; no superior alternative forum exists for the fair and efficient adjudication of the claims of all Class Members.

30.     Class action treatment in this matter is further superior to the alternative of numerous individual lawsuits by each Class Member because joinder of all Class Members would be either highly impracticable or impossible and because the amounts at stake for individual Class Members, while significant in the aggregate, are not great enough to enable

them to enlist the assistance of competent legal counsel to pursue their claims individually. In the absence of a class action in this matter, Defendants will likely retain the benefit of their wrongdoing. Further, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class. In turn, such adjudication would establish incompatible standards for Defendants, the parties opposing the Class.

31.     Moreover, if individual members of the Class prosecuted their claims separately, they would create a risk of adjudication on the construction of the SOA, which, as a practical matter, could be dispositive of the interests of absent members of the Class. Such adjudication without representation of all those with rights under the standard form SOA could substantially impair or impede such Class Members' ability to protect their interests. Prosecuting the claims in this case based on the standard form SOA is superior to adjudicating the claims in multiple individual actions.

## FACTUAL BACKGROUND SUPPORTING THE CLAIMS

32.     During the mid-1800's, the United States government granted millions of acres of land to Union Pacific and other railroads to aid in the construction of a transcontinental railway. Historically, these lands were referred to as Land Grant Lands (identified herein as Railroad Lands). Railroad Lands consisted of odd numbers of governmental sections within twenty (20) miles of each side of the railroad right-of-way. This UP Strip includes millions of acres and forms a checkered pattern running through Colorado, Wyoming, and into Utah. The below map, taken from Anadarko's former website,[5] shows

---

[5] Utah/Wyoming Land Grant Fact Sheet, www.anadarko.com>apc>United_States>Colorado (2016); *see also,* Anadarko Petroleum Corporation, Annual Report (Form 10-K), at 5 (Feb. 17 2016).

the vast UP Strip.



33.    During the late 1800's and throughout the 1900's, Union Pacific sold the surface of the Railroad Lands, reserving various mineral rights thereunder ("RR Minerals").

34.    Typically, Union Pacific leased the minerals to third party operators for oil and gas development and required that a standard form SOA with the surface owner be executed before commencement of oil and gas exploration or development.

35.    The SOA's purpose was originally to confirm the surface uses expressly stated in the SOA. Later, a second purpose was added to avoid and resolve any and all disputes of whatever nature in connection with the ownership of oil, gas, and associated liquid hydrocarbon substances.

36.    The SOA provides for payment to the owner of the SOA surface lands for as long as Union Pacific or its successor in interest receives oil and gas production or royalties upon oil and gas production from the lands subject to the SOA in exchange for surface use

and release of any claim to the minerals thereunder (the "Surface Owner Payment").

37. The Surface Owner Payment is 2 1/2% of the value of the production from wells on the SOA lands so long as there is production:

> [Union Pacific] agrees, so long as it is receiving oil and/or gas production from or oil and/or gas royalties upon production from the described premises or allocated thereto under the provisions of a unitization agreement, to pay or cause to be paid to the Landowner in cash the value (which shall never be greater than the amount realized by [Union Pacific] from the sale of such production) on the premises of two and one-half percent (2 1/2%) of all the oil and gas and associated liquid hydrocarbons hereafter produced, saved, and marketed therefrom or allocated thereto as aforesaid, except oil and gas and associated liquid hydrocarbons used in operations on the premises or used under the unitization agreement, and except that as to casinghead gasoline and other products manufactured from gas there shall be deducted the cost of manufacture; provided, however, that during any time the described premises or any portion thereof are included within the boundaries of a participating, pooled or communitized area, and there is no provision for the payment of royalties to [Union Pacific] but it participates in the production from the pooled, communitized, or unit area as a working interest owner, then the two and one-half percent (2 1/2%) above set forth shall be applied to that percentage of the total production from such area which is allocated to the described premises. Any payment made to the Landowner pursuant to Section 2 for production which is sold or which is used off the premises shall be calculated after deducting all taxes, now or hereafter levied against, paid on, or measured by production or the value thereof, and after deducting all costs incurred or borne by [Union Pacific] for treating the production to make it merchantable, and for gathering, transporting, compressing the production prior to the delivery to the purchaser at the point of sale or use.

See Exhibits 1 and 2, Section 2 (emphasis added).

38. In late 2000, Union Pacific sold the RR Minerals to APC, which, in 2019, merged into a wholly owned subsidiary of Defendant OPC, thereby becoming a wholly owned subsidiary of OPC.

39. In its 2015 Annual Report, Anadarko touted its fee ownership in the UP Strip:

> "The Company also has fee ownership of mineral rights under approximately eight million acres that pass through Colorado and Wyoming and into Utah (known as the Land Grant). Management considers the Land Grant a significant competitive advantage for Anadarko as it enhances the Company's economic returns from production, offers drilling opportunities for the Company without expiration, and allows the Company to capture royalty revenue from third-party activity on Land

Grant acreage. The Company also believes its liquids-rich reservoirs, strong well performance, low development and operating costs, and large expandable midstream infrastructure each provide tangible benefits to the Company." [6]

40.     Through APC's subsidiary and holding company Anadarko Land Corp., Anadarko continues to hold the RR Minerals and to receive production of or royalties on production for the RR Minerals.

41.     Before the 2000 sale to Anadarko, it had been the practice of Union Pacific since the 1920's to make the Surface Owner Payment to the surface owner of the land covered by an SOA on which the wells producing the RR Minerals were located. Historic documents indicate this royalty was to compensate the surface owner for what might be considered excessive surface use, and, after a 1959 court decision, to establish clear title to the RR Minerals.

42.     When Anadarko acquired the RR Minerals in 2000, it stopped issuing SOAs in Colorado. It did, however, honor pre-existing SOAs, i.e., SOAs that Union Pacific had signed before APC's acquisition in late 2000. That is, Anadarko made the Surface Owner Payment to the surface owner of the land covered by an SOA on whose surface the wells were located in Colorado if the surface owner or its predecessor in interest had an SOA with Union Pacific as the counterparty dated before late 2000.

43.     The SOA expressly directs payment of Surface Owner Payment to "the person or persons owning the surface of the described premises as of the date the oil or gas or associated liquid hydrocarbon production is marketed." Ex. 1 at Sec. 6.

44.     But in or about 2010, Anadarko unilaterally changed this practice. It began proportionately reducing Surface Owner Payment by the fraction of the acreage covered by

---

[6] Anadarko Petroleum Corporation, Annual Report (Form 10-K), at 5 (Feb. 17, 2016).

the SOA divided by the acreage in the drilling and spacing unit.

45.     In its 2015 Annual Report, Anadarko reported offsetting increased operating expenses with "lower payments to surface owners of $20 million."[7]

46.     More recently, Anadarko and its lessees began drilling two-mile lateral wells that originate on the surface above the RR Minerals (odd sections) and extend through even sections.

47.     For example, for two-mile lateral wells drilled from lands where full section SOAs are in effect, Anadarko pays half of the Surface Owner Payment, or 1 1/4%, to the surface owners in the odd section and nothing to the surface owners in the even section.

48.     This proportionate reduction is even more severe where the SOA covers only a portion of the odd numbered section.

49.     In making these unilateral changes in practices to reduce the Surface Owner Payment due under the SOAs, Anadarko breached the express terms of the SOAs, unjustly enriched itself at the expense of Plaintiffs and the Class, and materially misrepresented or omitted information necessary for Plaintiffs and the Class to ensure receipt of full payment of the Surface Owner Payments.

50.     Plaintiffs bring this class action on behalf of themselves and similarly situated Landowners with SOAs to recover the full Surface Owner Payment due them under the express terms of the SOAs.

---

[7] Anadarko Petroleum Corporation, Annual Report (Form 10-K), at 65 (Feb. 17, 2016) ("*2015 v. 2014* Other operating expense increased by $106 million…**partially offset by lower payments to surface owners of $20 million.**") (emphasis added).

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

51.     Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint as if fully set forth herein.

52.     Plaintiffs are Landowners under a SOA or their successors in title.

53.     Defendants are successors in interest to Union Pacific under a SOA.

54.     The SOA sets forth the contractual obligations of Plaintiffs and Defendants.

55.     Plaintiffs have performed all their obligations under the SOA by permitting Defendants, their agents, lessees, licensees, successors, or assigns to access the surface of the premises described in the SOA.

56.     Defendants have breached the SOA by paying less than the full Surface Owner Payment due Plaintiffs and the Class Members.

57.     Defendants' conduct in paying less than the full 2 1/2% Surface Owner Payment owed under the SOA has caused Plaintiffs monetary damages in an amount to be determined.

## SECOND CLAIM FOR RELIEF

### (Unjust Enrichment)

58.     Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint as if fully set forth herein.

59.     Defendants improperly reduced and withheld Surface Owner Payments owed to the Plaintiffs and the Class Members pursuant to the terms of the SOAs while concurrently benefitting from full use of the Plaintiffs' and the Class Members' surface estates for their operations.

60.     Plaintiffs, as owners of many thousands of surface acres subject to the SOAs

16

entered into by them or their predecessors in interest, are entitled to the full Surface Owner Payments set forth in the SOAs, in addition to interest thereon.

61. Defendants have been unjustly enriched by paying less than the full amounts due as Surface Owner Payments at the expense of Plaintiffs and the Class Members.

62. Plaintiffs and the Class Members are entitled to disgorgement for the amounts that Defendants have received, withheld, or profited from by paying less than the full amount due as Surface Owner Payments.

## THIRD CLAIM FOR RELIEF

### (Fraud, Deceit, and Constructive Fraud)

63. Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint as if fully set forth herein.

64. The Surface Owner Payment is to be a percentage of the value of the oil, gas, and associated hydrocarbons produced from the land subject to the SOA.

65. The Surface Owner Payment is to be made so long as Anadarko or its successor in interest is receiving oil and/or gas production or royalties from oil and gas production from or allocated to the lands or leases that include the lands subject to the SOA.

66. In making the Surface Owner Payments to Plaintiffs and the Class Members, Defendants made uniform and material misrepresentations and/or omissions, including, but not limited to:

      a. reporting lower volumes of oil, gas, and associated hydrocarbons on the Payments than the volumes actually produced, sold, and/or reported to the Colorado Oil and Gas Commission and/or others;

      b. reporting lower prices for the sale of the oil, gas, and associated hydrocarbons than the prices actually paid for the oil, gas, and

associated hydrocarbon products sold;

c.    reporting fewer constituents than those actually produced or sold from the premises subject to the SOAs;

d.    deducting costs from the Payments even though those costs were not incurred or borne by Anadarko for treating the production to make it merchantable or for gathering, transporting, and compressing the production; and

e.    deducting costs from the Payments even though those costs are not expressly authorized for deduction from the Payments under the SOA.

67.    In issuing the written Payments to Plaintiffs and the Class Members, Defendants made one or more material representations that were false and/or omitted to state one or more material facts needed to make what was stated not misleading.

68.    Defendants knew when material representations were made with the Payments that: a) the statements were false or misleading; b) the statements were made recklessly without knowledge of their truth; or c) the statements were made with the intent that Plaintiffs and the Class Members would rely on them.

69.    Plaintiffs and the Class Members did rely on the Payments to accurately reflect and account for:

a.    the actual volumes of oil, gas, and associated liquid hydrocarbons produced, saved, and marketed from the premises;

b.    the actual prices at which the oil, gas, and associated liquid hydrocarbons were sold; and

c.    the actual amount Defendants received in production or royalties from

the production, saving, and marketing of the oil, gas, and associated liquid hydrocarbons under Anadarko's oil and gas leases.

70.    The Payments appeared accurate to Plaintiffs and the Class Members based on the very limited information Defendants provided with the Payments.

71.    Plaintiffs and the Class Members reasonably and justifiably relied on the truth of the information shown on the Payments that Defendants provided to them.

72.    The conduct of Plaintiffs and the Class Members in: (a) cashing or depositing the Payments; (b) not questioning the truth and accuracy of the Payments; and (c) not suing for the matters set forth herein before now show that Plaintiffs and the Class Members reasonably relied on the truth and accuracy of the information shown on or provided with the Payments

73.    Plaintiffs and the Class Members lack the knowledge, experience, and access to information to determine the truth of the information shown on the Payments and to question, scrutinize, or be suspicious about the truth of that information.

74.    Defendants, not Plaintiffs or the Class Members, have access, either through their records or their relationships with third parties, to the information necessary to verify the truth and accuracy of the Payments.

75.    If Plaintiffs or the Class Members raised questions about the calculation of the Payments, they could not meaningfully refute Defendants' explanations or excuses.

76.    Plaintiffs and the Class Members did rely on and/or are legally presumed to have relied upon the uniform written representations on the Payments as being truthful and accurate, even if they were neither true nor accurate.

77.    Plaintiffs and the Class Members were underpaid and suffered injury as a

result.

78.     Defendants concealed or failed to disclose relevant facts about the amount of production and royalties that they received under their oil and gas leases and on which the Surface Owner Payments are based.

79.     In order to avoid presenting half-truths or misrepresentations, Defendants had a duty to disclose:

> a.     the actual volumes produced, saved, and/or marketed from the premises subject to the SOA;
>
> b.     the actual prices at which the oil, gas, and associated hydrocarbons were sold;
>
> c.     all constituents actually produced, saved, or marketed from the premises subject to the SOA;
>
> d.     the deductions actually incurred or borne by Anadarko;
>
> e.     all deductions taken from the Payments, whether expressly authorized in the SOA or not; and
>
> f.     the actual amount of production or royalties on the oil, gas, and associated liquid hydrocarbons produced, saved, and marketed from the premises subject to the SOAs that Defendants received under the oil and gas leases.

80.     Defendants undertook the duty to properly and truthfully account for the Payments.

81.     By speaking on the issue, Defendants had a duty to make full and fair disclosure of all relevant facts. This is especially so because Defendants had superior and

specialized knowledge, in addition to access to information, when compared to Plaintiffs and the Class Members.

82.     Defendants knew that their representations or omissions with the Payments were at least ambiguous and created a false impression of the actual facts to Plaintiffs and the Class Members.

83.     Defendants knew the facts were peculiarly within Defendants' knowledge and that Plaintiffs and the Class Members were not positioned to discover the facts pertaining to the actual amounts of oil and gas production or royalties on oil and gas production from the premises that Anadarko received and that were subject to the SOA, including the accurate volumes and prices. Thus, Plaintiffs and the Class Members were unable to realize full value of the oil, gas, and associated liquid hydrocarbons produced from the premises subject to the SOA. Accordingly, having spoken on the subject matter, Defendants assumed the duty to make full and fair disclosure of all material facts such that the Payments would not be misleading, but Defendants failed to do so.

84.     Defendants were deceitful by suggesting that the volumes, prices, values, deductions, and other statements were as set forth on the Payments, when, in reality, those statements were either untrue or inaccurate. Defendants knew the statements were untrue and had no reasonable grounds for believing they were true. Defendants only provided Plaintiffs and the Class Members with information that was likely to mislead for want of communication or undisclosed facts.

85.     The misrepresentations and omissions were made purposefully and were intended to suggest that the prices were third-party, commercial prices without hidden deductions, for which the volumes were accurately measured without volumetric deductions.

Defendants also represented that production or royalties were received on all constituents produced from the premises subject to the SOAs and that all deductions would be shown on Payments, when in fact, neither of these things occurred.

86.    By creating and disseminating misleading Payments to Plaintiffs and the Class Members, Defendants fraudulently and deceitfully misled Plaintiffs and the Class Members into believing that Defendants had paid them the full amount due under the SOAs when they had not.

87.    Defendants acted intentionally or recklessly in disregard of the rights and of Plaintiffs and the Class Members on a uniform basis. Defendants deceived Plaintiffs and the Class Members by providing Plaintiffs and the Class Members with Payments that were misleading and by failing to correct their practices. Consequently, punitive damages should be awarded and a finding should be made that Defendants acted intentionally and with malice toward Plaintiffs and the Class Members.

88.    As a direct and proximate result of Defendants' deceit, and fraud, Plaintiffs and the Class Members were underpaid and are entitled to recover actual and exemplary damages. Plaintiffs and the Class Members reserve the right to amend to include a claim for exemplary damages.

89.    In addition, the money wrongfully obtained or withheld by Defendants as a result of their actions should be held in a constructive trust with monetary interest for Plaintiffs and the Class Members.

90.    Because Plaintiffs and the Class Members were deceived and were without access to information necessary to discover the Defendants' scheme, they are entitled to the tolling of any applicable statute of limitation periods. Due to the Defendants'

misrepresentations, omissions, and/or general scheme to conceal underpayment of the Payments due under the SOAs, Plaintiffs and the Class Members did not and could not have become aware of this scheme through the exercise of reasonable diligence. Therefore, Plaintiffs and the Class Members are entitled to toll the applicable statutes of limitations based on the doctrines of fraudulent concealment, the discovery rule, continuing conduct, and equitable estoppel.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

1.  An order certifying and allowing this case to proceed as a class action with Plaintiffs as class representatives for the Class and the undersigned counsel as class counsel for the Class;

2.  An order requiring Defendants to pay Plaintiffs and all Class Members' actual damages, with interest at the highest allowable rate, to fully compensate them for losses sustained as a direct, proximate, and or producing cause of Defendants' breaches or unlawful conduct;

3.  An order permitting Plaintiffs and the Class Members to amend this Complaint to allege a claim for exemplary damages after a reasonable period of time to conduct discovery; and

4.  Such other and further relief as the Court deems appropriate.

## **PLAINTIFFS DEMAND A TRIAL BY JURY**

Plaintiffs demand a jury trial on all matters so triable.

DATED: August 7, 2020

s/ Rex A. Sharp
*Rex A. Sharp*, No. 17389
*Barbara C. Frankland*, No. 54469
Sharp Law, LLP
1499 W. 120th Ave., Suite 110
Westminster, CO 80234
Telephone: (913) 901-0505
Fax:         (913) 901-0419
Email:       rsharp@midwest-law.com
Email:       bfrankland@midwest-law.com

And

s/ Lance Astrella
*Lance Astrella,* No. 5183
Astrella Law, P.C.
1801 Broadway, Suite 1600
Denver, CO 80202
Telephone: (303) 292-9021
Fax:         (303) 296-6347
Email:       lance@astrellalaw.com

ATTORNEYS FOR PLAINTIFFS AND
THE PUTATIVE CLASS