**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Case No. 20-2352-WJM-SKC**

BOX ELDER KIDS, LLC, et al.,
individually and on behalf of themselves
and all others similarly situated,

      Plaintiffs,

vs.

ANADARKO E & P ONSHORE, LLC, et al.,

      Defendants.

---

**PLAINTIFFS' MOTION TO DISQUALIFY EXPERT WITNESS JAMIE JOST
AND TO EXCLUDE EXPERT REPORT**

---

As a regulatory attorney with no class action experience, Ms. Jost does not have

"scientific, technical or specialized knowledge" that will "assist the trier of fact to

understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Nor does her

experience in the oil and gas regulatory industry qualify her, "by knowledge, skill,

experience, training, or education," to testify as an expert on matters related to class

certification. Ultimately, her opinions do not assist the trier-of-fact – this Court – in

determining the question at issue: whether the Rule 23 factors for certification of a class

have been met. Plaintiffs therefore request that the Court disqualify and strike Ms. Jost

as an expert and exclude her report and all references to it.

On January 7, 2022, and concurrent with the filing of their brief in Opposition[1] to

---

[1] Def. Brief in Opposition to Plaintiffs' Motion for Class Certification [originally filed at
Doc. 97; updated, operative version at Doc. 105, unredacted version at Doc. 106-1.]

Plaintiffs' Motion for Class Certification,[2]  Defendants timely disclosed Ms. Jost as one of

their Rule 26(a)(2)(a) experts on class certification issues and attached her report. See

Exhibit 105-2. As required by Fed. R. Civ. P. 26(a)(2)(B), this report was accompanied by

Ms. Jost's curriculum vitae and qualifications. Ms. Jost is a seasoned regulatory attorney,

who has worked in the realm of oil and gas for two decades and appeared before the

Colorado Oil and Gas Conservation Commission ("COGCC"), Wyoming Oil and Gas

Conversation Commission and the New Mexico Oil Conversation Division and other

administrative bodies.[3]

On February 25, 2022, four days prior to Ms. Jost's scheduled deposition,

Defendants supplemented their expert disclosures with a list of Ms. Jost's expert

appearances in the last four years as required by Fed. R. Civ. P. 26(a)(2)(B)(v). This list

identified the two cases in which Jost served as an expert: one in Colorado state court[4]

and one in front of the administrative body at the COGCC. Ms. Jost confirmed in her

deposition that these were the only times she had served as an expert, and that the report

she authored in this case was the first ever expert report she has prepared.[5]

Every expert must start somewhere, but Ms. Jost—an oil & gas regulatory

attorney—appears here as an expert at the class certification stage, where merits of the

case are not considered. She has no experience with class actions. She has never

---

[2] Mot. For Class Cert. originally filed at Doc. 83; corrected version at Doc. 86; operative, updated version referenced herein at Doc. 104.

[3] Deposition Tr. of Jamie Jost, Mar. 1, 2022 ("Jost Tr.") at 25:22-25, 26:1-4, attached as Exhibit 1.

[4] A motion to exclude Ms. Jost as an expert was filed in this case, *Verdad Res., LLC v. HighPoint*, Case No. 2020CV30301, but was never ruled on because the case settled shortly after her deposition. Jost Tr. 22:1-9.

[5] Jost. Tr. 18:10-13, 123:24-124:1.

worked on a class action[6] and has never served as an expert in a putative class action.[7]

Nevertheless, in this class action, Defendants retained Ms. Jost to "review . . . Surface Owner Agreements, the class definition, and to identify practical consequences, or considerations of the class definition."[8] In her words, her ultimate expert opinions, at "a high level" are:

(1) "the class definition set forth in the First Amended Complaint is unclear; it's confusing"[9]; and

(2) the named Plaintiffs' Surface Owner Agreements ("SOAs") "provide for alternative methods of payment by use of the word [']or[']"[10]; and

(3) Plaintiffs' theory, if successful, would yield an "absurd result" by requiring a payment of "over two and a half percent."[11]

While Ms. Jost might enter her appearance in this case to critique Plaintiffs' claims and make legal argument on Anadarko's behalf, her qualifications do not permit her to testify as an expert witness.

## ARGUMENT

With a two-part test, the Tenth Circuit has tasked this Court with the role of gatekeeper to ensure that expert testimony admitted is not only relevant, but also reliable. *Brokop v. Farmland Partners Inc.*, No. 18-CV-02104-DME-NYW, 2021 WL

---

[6] Jost Tr. at 24:5-7.
[7] Jost Tr. at 17:19-24.
[8] Jost Tr. at 9:10-15.
[9] Jost Tr. at 11:18-21.
[10] Jost Tr. at 11:23-25.
[11] As reflected in her report, her primary opinions are that (1) the identification of surface owners in the Class requires a "highly individualized inquiry" and (2) this individualized inquiry is "a product of Plaintiffs' definition of the class." Jost Report, Doc. 105-2, at 27 "Conclusion."

4916240, at *11 (D. Colo. July 23, 2021), R&R adopted in part, 2021 WL 4913970 (D.

Colo. Sept. 30, 2021) (citing *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D.

Colo. 2006); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588–89 (1993). **First**, the Court reviews whether

the expert has a reliable basis in knowledge and experience by conducting a preliminary

inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e.,

whether the reasoning or methodology underlying the testimony is valid. *See id.* **Second**,

the Court must evaluate relevancy and helpfulness to the trier-of-fact. *See id.*

1. **Jamie Jost does not possess the requisite qualifications to serve as an expert witness.**

*Daubert* and its progeny defined the high threshold Fed. R. Evid. 702 requires for

a witness to qualify as an expert, and Ms. Jost does not meet that bar.[12] Both the

language of Rule 702 and Tenth Circuit precedent make clear that the "specialized

knowledge" required for expert testimony "can be acquired through 'experience' and

'training.'" *O'Sullivan v. Geico Cas. Co*., 233 F. Supp. 3d 917, 924 (D. Colo. 2017) (citing

*United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (quoting Fed. R. Evid. 702)).

But Ms. Jost does not have specialized experience or training on SOAs necessary to form

a reliable opinion. Nor does she have any specialized experience (admittedly no

experience) in class actions.

---

[12] A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

### a. There is no basis for expert opinion based on Ms. Jost's professional legal career, which includes no class action litigation experience.

As stated on her resume, set forth in the first 1.5 pages of her report,[13] and confirmed in her deposition, Ms. Jost has worked as an attorney in the legal field, with emphasis on the oil and gas industry including extensive representation of oil and gas operators in the regulatory field and has limited experience in regional District Courts.[14] She has appeared in federal court approximately ten times in her career.[15] But all of those cases related to the oil and gas industry generally, not to the specific determination of oil and gas interests to be paid, like at issue here.[16] She represented operators or producers in all of these instances and has never represented a surface owner or royalty owner.[17]

Her professional legal experience alone does not qualify her as an expert, nor has she has ever appeared as an expert witness in any federal court.[18] Ms. Jost has enjoyed a meaningful career in the field and discusses industry custom and practice throughout her report, and indeed expert witness testimony is often helpful to establish standards, *see e.g. Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 415 (Colo. 2004) (discussing helpfulness of expert opinion regarding objective evidence in the insurance industry), but the industry to which Ms. Jost refers is the general oil and gas industry, not the unique breed of contract that are SOAs, nor the specialized procedural mechanism

---

[13] Doc. 105-2 ¶ 1.
[14] See *Id.*
[15] Jost. Tr. 22:24-23:3.
[16] Jost. Tr. 23:10-20, *see* Jost Tr., generally.
[17] Jost. Tr. 24:2-4.
[18] Jost. Tr. 22:10-14.

that is Rule 23 class certification. She possesses no other special skills that qualify her as an expert for this case, whether at the class certification or merits stages.

In the list of documents reviewed, Ms. Jost does not indicate that she consulted any texts, treatises, materials regarding SOA contract construction or class certification, or other instructive publications as part of her analysis. She simply reviewed the 210 SOAs identified by Plaintiffs as Class SOAs and the legal briefing in the instant case, Plaintiffs' operative Complaint and Plaintiffs' expert materials.[19] Rule 702 assigns the trial court the task of ensuring that an expert's testimony rests on a good, reliable foundation. *Daubert*, 509 U.S. at 597. Ms. Jost's report entirely lacks foundational reliability. *See, e.g. Anzora v. Lezama*, No. 117CV01983DDDNRN, 2019 WL 3334685, at *2 (D. Colo. July 24, 2019) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)); *Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-RBJ-KLM, 2012 WL 3399367, at *2 (D. Colo. Aug. 15, 2012) (citing *Daubert,* 509 U.S. 579, 592 n.10 (1993)) (While the proponent of expert testimony is not required to prove that the expert's opinion is objectively correct, it bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.)

### b. There is no basis for Ms. Jost to offer an expert opinion on SOAs or interpretation of their payment obligations.

Ms. Jost has little to no experience with payment under SOAs to surface owners. Jost. Tr. 79:1-6. (She testified she had read "probably 20-25" SOAs prior to being retained in this case). Ms. Jost refused to provide further detail on the "types of issues" or context for her prior review and work with SOAs, on the basis of attorney-client privilege.[20] Ms.

---

[19] Doc. 102-2 at Attachment C.
[20] Jost. Tr. 83:21-84:14.

Jost testified that she has never drafted an SOA,[21] nor has she ever represented a party

negotiating an SOA,[22] nor has she ever been involved in class litigation.[23]

Consequently, and even if attorney opinion would be helpful to the trier-of-fact in

understanding the evidence (which it is not), Ms. Jost cannot reliably opine about how

class certification would affect surface owners because she does not understand how

SOAs are paid, nor does she possess the experience or expertise to provide the Court

with meaningful testimony about the proper payment methods to surface owners.[24]

2. **Ms. Jost's opinions not only embrace merits, but are unreliable and
unhelpful because they are based on Flawed Assumptions and a
fundamental mischaracterization of Plaintiffs' theory of liability.**

The ultimate legal questions in this case are whether the Surface Owner

Agreements prevent Anadarko from making the deductions it is making, and whether the

Surface Owner Agreements prevent Anadarko from proportionately reducing payments

to SOA landowners with wells drilled on the surface of the SOA's described premises that

extend beyond its boundaries. Plaintiffs argue that these questions can be resolved, win

or lose, on a classwide basis. But Jost's opinions are merits arguments against Plaintiffs'

interpretation of the SOA payment obligations, the class definition, and membership

determination. A Rule 23 order is "not to adjudicate the case" and "free-ranging merits

inquiries" are not proper at the certification stage. *Amgen Inc. v. Conn. Ret. Plans & Tr.
Funds*, 568 U.S. 455, 460, 465–66 (2013).

---

[21] Jost. Tr. 85:8-10.
[22] Jost. Tr. 86:9-11.
[23] Jost Tr. 24:5-7.
[24] When Plaintiffs' Counsel tried to further understand Jost's historical experience working
with SOAs, Jost repeatedly claimed attorney-client privilege and confidentiality and said
she couldn't elaborate on this experience. Jost. Tr. 83:21-84:14.

Even if she possessed the specialized knowledge, training, and experience necessary to offer an expert opinion, Ms. Jost's report profoundly misstates Plaintiffs' claims. She refers to an "allocated payment" method, but does not appear to know how Anadarko pays the SOA holders.[25] Further, she critiques Plaintiffs' case for complaining about Anadarko's reduction of the 2.5% payment on production from wells drilled on the surface of subdivided lands within a single SOA; in fact, Ms. Jost mistakenly accuses Plaintiffs of arguing that Anadarko should *not* share the 2.5% payments among the landowners *within* an SOA's described premises.[26] In other words, Ms. Jost appears to believe Plaintiffs' claim is that the SOA entitles each SOA landowner within a described premise to **each** get 2.5% of the production from wells drilled on the surface. For example, if the land subject to a single SOA was divided into four (4) subparts, Ms. Jost surmises that Plaintiffs allege Anadarko should be paying a total sum that would be equivalent of 10% of the well proceeds (or 2.5% x 4 landowners), instead of .625% (2.5% / 4 landowners) to each SOA holder.[27] This assumption is error, and fundamentally mischaracterizes Plaintiffs' claim.

Plaintiffs' complaint alleges that in 2010, Anadarko began using the larger spacing unit, in which an SOA's described premises sits, to justify a "proportionate reduction" of the 2.5% payment on wells within the SOA. Specifically, Anadarko changed from paying the full 2.5% to paying SOA holders only a fraction of the 2.5%, where the numerator is the landowners' interest within the SOA described premises, and the denominator is the acreage of the larger spacing unit. This practice results in Plaintiffs receiving an amount

---

[25] Jost Tr. 50:17-20.
[26] Doc. 105-2 ¶ 25(a).
[27] Doc. 105-2 ¶ 25(a).

equal to 2.5% x [SOA Total Acreage / Spacing Unit Total Acreage], which is then allocated

to surface owners based on their individual ownership acreage within the larger SOA.

Plaintiffs do not challenge the allocation among landowners *within the same SOA*.

Instead, Plaintiffs argue that the "proportionate reduction" of the 2.5% payment by the

fraction of each SOA's acreage within the larger spacing unit conflicts with the express

terms of the SOAs. Plaintiffs explain this in detail in their Reply to Defendants' Opposition

to Class Certification.[28] But for purposes of this Motion, it is sufficient that Ms. Jost's

assumptions and resulting opinions are based on Defendants' obfuscation of Plaintiffs'

claims, and thus cannot be relied upon. This failed analysis, compounded by Ms. Jost's

lack of knowledge and expertise on SOAs, render her opinions inadequate when applying

Fed. R. Evid. 702 and the relevant, binding case law for expert witnesses.

### 3. Ms. Jost's expert report does not assist the Court in analyzing factors relevant to determining whether a class should be certified.

After the Court's critical analysis of the expert's qualifications and reliability, it must

then examine if the proffered opinion fits the case. "The Supreme Court has described

the consideration of relevant evidence as one of 'fit.'" *Beltran v. InterExchange, Inc.*, No.

14-CV-03074-CMA-KMT, 2018 WL 526907, at *6 (D. Colo. Jan. 24, 2018), aff'd, No. 14-

CV-03074-CMA-CBS, 2018 WL 1509258 (D. Colo. Mar. 27, 2018) (citing *Bitler,* 400 F.3d

at 1234, quoting *Daubert,* 509 U.S. at 591)). Even if an expert's proffered evidence is

scientifically valid and follows reliable methodologies, it might not have sufficient bearing

on the issue at hand to warrant a determination that it has relevant fit. *Id.*

Ms. Jost's 27-page report contains her recitation and analysis of the Surface

Owner Agreements, her flawed grasp of the theories of liability in this case, and her

---

[28] *See generally* Doc. 116.

conclusion that the class members would be difficult to identify. Setting aside the faulty

merits arguments, the crux of Ms. Jost's report is her conclusion that the class should not

be certified because it is not ascertainable. Ms. Jost views Plaintiffs' class definition as

being fluid and requiring an intensive, individualized inquiry of each SOA at issue.[29] Ms.

Jost's positions either constitute legal conclusions (a job squarely carved out for the

Court) or irrelevant, unreliable opinions that do not assist the Court in its Rule 23 analysis.

**a. Ms. Jost's primary task was to characterize the difficulty of determining class membership under Plaintiffs' class definition, but her opinions and conclusions are unhelpful because the class is ascertainable under Plaintiffs' modified definition.**

Defendants use Ms. Jost's opinions to support their contention that Plaintiffs'

proposed class is not ascertainable and that class members can't be reasonably

identified.[30] Setting aside Ms. Jost's lack of qualifications to opine on ascertainability, and

the fundamental flaws upon which her report is based, the opinion on ascertainability of

the putative Class provides no help to the Court.

Under Tenth Circuit law, "[i]t is unsettled whether ascertainability is a separate and

distinct requirement for class certification under Rule 23(b)(3)." *In re EpiPen Mktg., Sales*

*Practices & Antitrust Litig*., No. 7-MD-2785-DDC-TJJ, 2020 WL 1180550, at *9 (D. Kan.

Mar. 10, 2020). Ascertainability, in some form, is usually analyzed as a factor at class

certification by lower courts within the Tenth Circuit—*but only when raised* by the

defendant in responding to a motion for class certification. *Id*. Under the majority rule on

ascertainability, "the class definition must not be too vague, the class must not be defined

by subjective criteria, and the class must not be defined in terms of success on the merits."

---

[29] Doc. 105-2 ¶ 20.
[30] *See generally* Doc. 105-2.

*In re EpiPen*, 2020 WL 1180550, at *11. But the term ascertain*ability* means only having

the ability *to be* ascertained. Defendants invite reversible error by claiming this factor

precludes certification.

This Court has held that a class is sufficiently ascertainable if "it is administratively

feasible for the court to determine whether a particular individual is a member." *Black*

*Lives Matter 5280 v. City & Cty. of Denver*, 338 F.R.D. 506, 509 (D. Colo. 2021) (citing

*Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995)). In fact, "*even substantial*"

administrative work is not a barrier to class certification; such an excuse would undermine

"the very purpose of class action remedies." *Rikos v. Procter & Gamble Co.*, 799 F.3d

497, 525–26 (6th Cir. 2015) (emphasis original, citation omitted). During Ms. Jost's

deposition, when asked if it would be "impossible" to identify the class members, Ms. Jost

initially stated "[a]s of this point, yes."[31] Following further reflection over a lunch break,

Ms. Jost sought to correct her previous testimony, stating "it's not impossible, but it's very

very difficult as we've talked about . . . ."[32] Accordingly, by her own admission,

ascertainability is not an issue precluding class certification.[33]

Not only is it possible to identify who is in the class, it can be accomplished

relatively simply. See Reply at 7–9. Plaintiffs have identified the Class SOAs and the

Class Wells through a process ratified by Defendants' other expert, economist Eric

Krause[34], and by Anadarko's 30(b)(6) corporate representative, Sean Murphy.[35]

---

[31] Jost. Tr. 56:15-19.
[32] Jost. Tr. 72:13-20.
[33] *See In re EpiPen*, 2020 WL 1180550, at *11 (predicting that "the Tenth Circuit, if confronted with this question, would decline to recognize ascertainability as a separate, unstated requirement of Rule 23…") (citing *In re Syngenta*, 2016 WL 5371856, at *2–3)).
[34] Krause Tr. 161:1-18, 172:19-21.
[35] Murphy Tr. 67:12-20.

Defendants' own payment records will enable the Court (or Notice Administrator) to identify, by unique Owner ID, the Surface Owner class members who have been underpaid.

Even if Ms. Jost was qualified to opine as an expert on the clarity of the class definition, or its practical impact on class membership determinations, Plaintiffs' Reply offers a clarified class definition responsive to Defendants' arguments and Ms. Jost's observations. Ms. Jost's primary criticism, on which she bases her opinion that it would take a very "specialized and individualized inquiry" to determine "who may or may not be part of the class,"[36] is that the class definition "is confusing because it doesn't use the term [']described premises['] it uses the term [']land['], producing from outside of the described premises."[37] Whether characterized as an expert opinion, a layperson's observation, or an attorney's argument, any confusion is eliminated by Plaintiffs' proposed modified definition. See Reply at 15.

### b. Ms. Jost's remaining opinions are legal argument or legal conclusions, not proper expert testimony.

The remainder of Ms. Jost's report contains her own legal argument or legal conclusions regarding Plaintiffs' claim. Such conclusions are not the province of an expert but are reserved for the court. Where the ultimate issue is a question of law, the opinion of a legal expert, even a lawyer, interferes with the judge's role as "sole arbiter of the law" and should not be allowed. *Wollan v. U.S. Dep't of Interior, Bureau of Land Mgmt.*, 997 F. Supp. 1397, 1403 (D. Colo. 1998) (citing *Specht v. Jensen*, 853 F.2d 805, 807–810 (10th Cir. 1988) (reversing ruling allowing expert to opine as to whether there had been

---

[36] Jost Tr. 55:15-19
[37] Jost Tr. at 28:1-4; *see also* 49:1-50:11.

12

a "search" of plaintiff's home as this interfered with judge's role)). In addition, an expert

may not ordinarily "state legal conclusions drawn by applying the law to the facts," as

such testimony is typically not helpful to the finder of fact. *A.E. By & Through Evans v.*

*InTr. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991); *Okland Oil Co. v. Conoco Inc.*,

144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her

opinion as to legal standards nor may he or she state legal conclusions drawn by applying

the law to the facts."). But this is precisely what Ms. Jost does.

Although Ms. Jost denies being asked to apply the law to the facts of the case as

part of her engagement,[38] these types of conclusions are pervasive throughout her report

and testimony. Because this procedural stage of the case *only* requires a rigorous

analysis of the Rule 23 factors, opinion and argument about whether these factors are

met are for counsel to make and the Court to pass judgment on, not Defendants' expert.

For example, Ms. Jost opines:

> "This [individualized] review is required to identify surface owners that are
> in the class, and surface owners (subject to the same SOA) that are not in
> the class. The analysis will not be **uniform, common, or typical** across
> severed surface owners, or even among all surface owners that own
> separate parts of the described premises in the same SOA."[39]

But when asked in her deposition to elaborate on uniformity, commonality, and typicality,

Ms. Jost declined, stating: "I mean, I have an understanding of the Rule, but again, in my

expert capacity here today, I'm not here to determine that question."[40] When asked what

---

[38] Jost. Tr. 34:8-18.
[39] Doc. 105-2 ¶ 21. (emphasis added)
[40] Jost. Tr. 38:1-9

her understanding of typicality was, Ms. Jost simply replied that she had an understanding of "a Federal rule that requires standards for class certifications."[41]

Even if the Court concludes that Ms. Jost's expert opinion doesn't embrace impermissible legal opinion or conclusion, Rule 702 requires that any proffered expert testimony be "help[ful] [to] the trier of fact to understand the evidence or to determine a fact in issue." Fed. Rule Evid. 702(a). *Romero v. Allstate Fire & Cas. Ins. Co.*, 2015 WL 5321441, at *4–5 (D. Colo. Sept. 14, 2015). These sweeping conclusions do not provide any help to the trier-of-fact about whether the claim presented in this case is appropriate for class treatment.

### c. Ms. Jost's report also contains conclusory and prejudicial opinions that should be stricken.

Other unhelpful statements included in Ms. Jost's opinion about the merits of the case must be disregarded, as they render no aid to the Court in deciding whether to certify the class, especially given how she misstates Plaintiffs' claims as described above. Throughout her report, Ms. Jost alleges Plaintiffs' contract interpretations are wrong, in dramatic fashion. For example:

- "It is known and well documented that multiple surface owners may own separate lands subject to a single SOA, Plaintiffs' First Amended Complaint appears to request one of at least two possible outcomes for the class, **one of which yields an absurd construction of the SOA a**nd the other which would operate to the detriment of some class members." Doc. 105-2 ¶ 25. (emphasis added)

- "**Such an outcome would be an absurd construction of the SOA** because no SOA provision states that Anadarko's SOA payment will exceed 2.5% of the value of the produced oil and gas." Doc. 105-2 ¶ 25(a). (emphasis added)

- "Plaintiffs' argument about how, exactly, Anadarko should pay the subset of surface owners who are part of the class … **results in an absurd outcome**…" Doc. 105-2 ¶ 33. (emphasis added)

---

[41] Jost. Tr. 38:10-17

These statements are merely conclusory criticisms of Plaintiffs' case, based on a fatally flawed depiction of the nature of the claim and the class Plaintiffs seek to represent, and they provide no assistance to the Court in evaluating the Rule 23 factors. These assertions, along with Ms. Jost's report and positions relying on and referring to it in Defendants' Opposition to Plaintiffs' Motion for Class Certification, should be disregarded.

## CONCLUSION

Jamie Jost has had a successful career as an administrative law attorney in the field of oil and gas. However, she lacks any specialized knowledge of or experience with how SOAs should be paid and how surface owner class members may be identified, particularly in this case. Additionally, her conclusory opinions do not "fit" the needs of the case and are simply not helpful to the finder of fact or arbiter of law. Plaintiffs respectfully request this Court disqualify Ms. Jost from serving as an expert in this case, and strike Ms. Jost's report and all references to it in the record, and for all other relief that the Court deems just and proper.

DATED: March 25, 2022

*s/ Sarah T. Bradshaw*
Rex A. Sharp, No. 17389
Gregory M. Bentz
Charles T. Schimmel
Larkin E. Walsh
Sarah T. Bradshaw, No. 54512
Brandon C. Landt
4820 W. 75th Street
Prairie Village, KS 66208
Telephone: (913) 901-0505
Fax: (913) 901-0419
rsharp@midwest-law.com
gbentz@midwest-law.com
cschimmel@midwest-law.com

15

lwalsh@midwest-law.com
sbradshaw@midwest-law.com
blandt@midwest-law.com


And

s/ *Lance Astrella*
Lance Astrella, No. 5183
Astrella Law, P.C.
1801 Broadway, Suite 1600
Denver, CO 80202
Telephone: (303) 292-9021
Fax: (303) 296-6347
lance@astrellalaw.com

ATTORNEYS FOR PLAINTIFFS AND
THE PUTATIVE CLASS

## CERTIFICATE OF CONFERRAL

Plaintiffs certify that, pursuant to D.C. Colo. L. Civ. R. 7.1(a), undersigned counsel conferred with counsel for Defendants on March 22, 2022 via phone conference and counsel for Defendants indicated that they oppose the relief requested in this motion.

s/ *Sarah T. Bradshaw*
Sarah T. Bradshaw

ATTORNEY FOR PLAINTIFFS AND
THE PUTATIVE CLASS

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ *Sarah T. Bradshaw*
Sarah T. Bradshaw

ATTORNEY FOR PLAINTIFFS AND
THE PUTATIVE CLASS