**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2352-WJM-SKC

BOX ELDER KIDS, LLC,
C C OPEN A, LLC, and
GUEST FAMILY TRUST, by its Trustee CONSTANCE F. GUEST, individually and on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

ANADARKO E & P ONSHORE, LLC,
ANADARKO LAND CORPORATION, and
KERR-MCGEE OIL AND GAS ONSHORE, LP,

    Defendants.

---

**ORDER DENYING MOTION UNDER FEDERAL RULE OF EVIDENCE 702**

---

Plaintiffs Box Elder Kids, LLC ("Box Elder"), C C Open A, LLC ("CC Open A"), and the Guest Family Trust, by its Trustee Constance F. Guest, individually and on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") bring this breach of contract lawsuit against Anadarko E & P Onshore, LLC, Anadarko Land Corporation, and Kerr-McGee Oil and Gas Onshore, LP (collectively, "Defendants"), alleging that Defendants failed to pay them the correct monetary amount pursuant to the terms of their surface owner agreements ("SOAs").  (ECF No. 25.)

Before the Court is Plaintiffs' Corrected Motion to Disqualify Expert Witness Jaime Jost and to Exclude Expert Report ("Motion") (ECF No. 118).  Defendants filed a response.  (ECF No. 127.)  For the reasons set forth below, the Motion is denied.

## I. BACKGROUND[1]

The Court assumes the parties' familiarity with the facts of this case and limits the background discussion below to those facts necessary to rule on the Motion.

In their briefing opposing Plaintiffs' Corrected Motion for Class Certification and Brief in Support (ECF No. 104), Defendants offer the expert opinions of oil and gas attorney Jaime Jost.[2] (*See* ECF No. 105.) Jost also prepared an expert report. (ECF No. 105-2.)

Jost has been a practicing attorney in the oil and gas industry for 20 years and is licensed in Colorado, Wyoming, and New Mexico. (*Id.* at 2.) Jost has represented oil and gas operators in regulatory and litigation matters before state regulatory agencies in Colorado, Wyoming, and New Mexico; the federal district courts of those same states; and the United States Court of Appeals for the Tenth Circuit. (*Id.*) She has obtained orders and authorizations from state and federal agencies for over ten thousand wells and two thousand drilling and spacing units, and she has obtained over one thousand statutory pooling orders in Colorado and Wyoming. (*Id.*) Jost has also become familiar with the various agreements common in the oil and gas industry dealing with mineral rights and proceeds payments. (*Id.*)

Defendants retained Jost to "review . . . Surface Owner Agreements, the class

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Discovery in this action has been bifurcated into the certification stage and, if necessary, a later merits stage. (ECF No. 37 at 20.) Counsel for Defendants confirmed via e-mail that, at this stage of the litigation, Defendants have not decided whether they will endorse Jost as a testifying witness at trial. Therefore, the Court considers the issues raised in the Motion as pertaining to Jost's expert qualifications solely within the context of Plaintiffs' class certification motion.

2

definition, and to identify practical consequences, or considerations of the class definition." (ECF No. 118-1 at 3.) Jost's report contains numerous opinions related to these topics, which she described "at a high level" in her deposition as: (1) "the class definition set forth in the First Amended Complaint is unclear [and] confusing"; (2) "the Shaklee and Guest Surface Owner Agreements provide for alternative methods of payment"; and (3) a construction of the SOAs that results in "a payment over two and a half percent as required by the Surface Owners Agreement" would be "absurd." (*Id.*) Defendants rely on Jost's opinions in opposing Plaintiffs' class certification motion. (ECF No. 105 at 7, 8 n.5, 15 n.18, 17 n.22, 19 n.27, 21.)

## II. LEGAL STANDARD

A district court must act as "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advanc[e] a material aspect

3

of the case" and be "sufficiently tied to the facts of the case that it will aid the [finder of fact] in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alterations in original).

While an expert witness's testimony must assist the finder of fact to be deemed admissible, Fed. R. Evid. 702(a), it may not usurp the fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful and what intrudes on the province of the finder of fact is not always clear, but "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note.

## III. ANALYSIS

The Court observes that Jost's opinions can be divided, at a general level, into two categories: (1) opinions concerning standards and practices common to the oil and gas industry; and (2) everything else.

### A.     Industry Standards and Practices

Plaintiffs' argue that Jost is not qualified to "testify as an expert on matters related to class certification" because she "does not have specialized experience or training on SOAs necessary to form a reliable opinion[, n]or does she have any specialized experience (admittedly no experience) in class actions." (ECF No. 118 at 1, 4.) Plaintiffs emphasize that Jost's career has focused on representing oil and gas operators in the regulatory context rather than in making "specific determination[s] of oil and gas interests to be paid." (*Id.* at 4.) They also stress that Jost is not experienced with "the specific breed of contract that are SOAs" or "the specialized procedural mechanism that is Rule 23 class certification." (*Id.* at 5.)

Defendants respond that they offer Jost as an expert on "well spacing units for multiple tracts of land and the allocation of oil and gas production and payments to those lands," not Rule 23.  (ECF No. 127 at 1–2.)  Defendants point to Jost's two decades of experience as an oil and gas attorney, including the thousands of wells and drilling and spacing units she has gotten approved and statutory pooling orders she has obtained; her knowledge of various types of agreements common in the industry; and her knowledge of industry standards with respect to payment of proceeds and unitization agreements.  (*Id.* at 5.)

The Court agrees with Defendants that Jost has the requisite knowledge and experience to offer expert opinions on factual issues relevant to class certification—namely "industry custom and practice regarding oil and gas allocation, unitization, production payments, surface ownership, and the applicable contractual agreements that are all central issues to the putative class."  (*Id.*)

Plaintiffs argue Jost should not be qualified as an expert because the opinions she offers are unreliable.  In support, they argue Jost "profoundly misstates" their claims in her report and that her mistaken "assumptions and resulting opinions are based on Defendants' obfuscation of Plaintiffs' claims."  (ECF No. 118 at 7.)  The Court interprets this argument as an attack on the reliability of Jost's methodology.

Defendants' rejoinder leaves something to be desired, merely reiterating Jost's "reliable experience."  (ECF No. 127.)  While the Court notes that the language Defendants seem to reference concerns whether an expert's opinions are "the product of reliable *principles and methods*," Fed. R. Evid. 702(c) (emphasis added), it also notes that the *Daubert* factors codified in Rule 702 "do *not* constitute a definitive checklist or

5

test." *Kumho Tire*, 526 U.S. at 150 (emphasis in original). The Court's "gatekeeping inquiry must be tied to the facts of a particular case." *Id.*

Defendants offer Jost based on her experience in the oil and gas industry and her opinions concern the customs and practices of that industry. These are not the sort of opinions to which a particular methodology is an obviously relevant consideration. Plaintiffs' argue Jost's assumptions are wrong and therefore so are her opinions—garbage in, garbage out. Not only is this argument undercut by Plaintiff's "clarification" of the class definition (apparently) partly in response to Jost's opinions (ECF No. 127 at 9–10), the Court finds that it goes to the weight Jost's opinions should be given, and not to their reliability.

### B. Jost's Other Opinions

Plaintiffs' final argument to exclude Jost's opinions is that, even if they are valid and reliable, they are irrelevant and do not assist the Court in determining whether the purported class should be certified. (ECF No.118 at 8.) Plaintiffs take particular aim at what they describe as the "crux" of Jost's report: "that the class should not be certified because it is not ascertainable and/or requires intensive, individualized inquiry of each SOA at issue." (*Id.*) These opinions, according to Plaintiffs, are legal conclusions reserved for the Court. (*Id.* 8–11.) Defendants strenuously contest this characterization of Jost's opinions, insisting that she has "identified practical subject matter observations about the class definition and the proposed class action topics" that will "assist this Court in considering whether Plaintiffs have satisfied Rule 23." (ECF No. 127 at 7.)

While it is permissible for an expert to testify to "ultimate issue[s]," Fed. R. Evid. 704, and Tenth Circuit law permits experts to "refer to the law in expressing their opinion," experts are still prohibited from usurping the function of the finder of fact.

*United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)) (internal quotation marks and alteration omitted). One way that experts can do this is by overreliance on "specialized legal term[s]." *Id.*; *see also United States v. Richter*, 796 F.3d 1173, 1198 (10th Cir. 2015). Commonality and typicality are legal terms of art, and expert opinions on whether the legal standards of commonality and typicality are met in a particular case are impermissible. *See Abraham v. WPX Production Productions, LLC*, 184 F. Supp. 1150, 1204 (D.N.M. 2016).

Plaintiffs highlight Jost's apparent reliance on specialized legal terms in her opinions contained in paragraphs 21 and 22 of her report. (ECF No. 118 at 10 n.42.) Jost writes:

> There is no part of this [absent class member identification] analysis that is uniform, common, or typical between potential class member surface owners because surface owner parcels and spacing units are not uniform; they vary by well type, location, jurisdiction, formation or productive reservoir, and individual unitization agreements and/or pooling orders. . . .
>
> The analysis will not be uniform, common, or typical across severed surface owners, or even among all surface owners that own separate parts of the described premises in the same SOA.

(ECF No.105-2 at 17–18.) It is true that Jost uses the words "common" and "typical," but these opinions are not about commonality or typicality within the meaning of Rule 23(a). As the Court (and apparently Plaintiffs) understand them, these opinions concern ascertainability—not commonality or typicality. (ECF No. 118 at 8–11.) The Court finds that Jost uses the terms "common" and "typical" in their ordinary sense rather than as terms of art in the context of Rule 23 jurisprudence. Jost does not opine that the class members cannot be ascertained. Instead, she explains, based on her knowledge of

7

and experience with the oil and gas industry, why a one-size-fits-all method for identifying absent class members is flawed in her opinion.

The Court is sensitive to the fact that expert opinions carry with them an authority that lay opinions do not. The Court, however, is trained in the law and can readily distinguish between words used as legal terms of art and words used for their ordinary meaning. Therefore, the Court finds that Jost's opinions do not usurp the province of this Court (as finder of fact with regard to the issue of class certification), and it further finds that Plaintiffs' arguments go to the weight—and not the admissibility—of Jost's expert opinions.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS that Plaintiffs' Corrected Motion to Disqualify Expert Witness Jaime Jost and to Exclude Expert Report (ECF No. 118) is DENIED.

Dated this 21st day of October, 2022.

BY THE COURT:

William J. Martínez
United States District Judge