IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-02352-WJM-SKC

BOX ELDER KIDS, LLC;
C C OPEN A, LLC; and
GUEST FAMILY TRUST, by its Trustee CONSTANCE F. GUEST,

      Plaintiffs,

v.

ANADARKO E & P ONSHORE, LLC;
ANADARKO LAND CORPORATION; and
KERR-MCGEE OIL AND GAS ONSHORE, LP

      Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL, DKT. 155

---

This matter is before the Court on referral of Plaintiffs' Motion to Compel Production of Documents from Defendants' Privilege Log, Dkt. 155. This dispute is old in part due to the procedural posture of the case. It first arose with the parties' September 16, 2021 Joint Discovery Dispute Report, Dkt. 80. After an informal telephone conference with counsel on May 31, 2022, Dkt. 135, the Court took these issues under advisement pending a ruling on Plaintiffs' motion for class certification. When District Judge Martinez denied the motion for class certification, this Court

authorized Plaintiffs' filing of a motion to compel concerning the unresolved issue of Defendants' failure to produce responsive documents noted on their privilege log.

The Motion to Compel is fully briefed. The Court has carefully reviewed the Motion, pertinent docket entries, and applicable law. Further, Defendants provided the disputed documents to the Court for its *in camera* review. As explained below, the Court reviewed some, but not all documents. No additional hearing or discussion with counsel is necessary.

### A. Background of this Discovery Dispute

Plaintiffs are three surface landowners of acreage in Colorado that is subject to respective Surface Owner Agreements (SOAs) with Defendants. The SOAs quiet title to the minerals and authorize Defendants to enter and drill on Plaintiffs' lands to produce oil and gas. In exchange, Defendants agreed to pay Plaintiffs 2.5% of the production value from the wells. Prior to 2010, Defendants paid 2.5% of the cash value of a well's production to the owner of the land on which the wellhead sat. Since 2010, Defendants have allocated payments differently based on what percentage of a well's spacing unit was within a landowner's parcel, regardless of where the wellhead is located. This change in methodology resulted in some SOA landowners receiving larger payments, while others' payments were reduced. In 2020, Plaintiffs brought this suit for breach of contract asserting Defendants breached the SOAs when they changed the methodology for calculating the payments owed under the SOAs.

When this discovery dispute first arose in September 2021, Dkt. 80, Defendants were on their Fourth Amended Privilege Log. By the time Plaintiff filed the Motion to Compel in February 2023, Defendants were on their Sixth Amended Privilege Log. Both the Fourth and Sixth Logs were provided to the Court. According to Defendants,

> [t]he Fifth Log added extensive detail regarding Defendants' claim of privilege, most notably by adding 600 additional entries supporting Defendants' work product claim. Plaintiffs' attack the sufficiency of the Fourth Log, but the Fifth and Sixth Logs resolve many of Plaintiffs' claims. The Sixth Log identifies documents that were produced in redacted form and adds additional detail regarding why certain documents are privileged.

Dkt. 158 at pp.4-5.

This dispute is over 66 documents which Defendants have either not produced or produced with redactions,[1] claiming attorney-client privilege, work product, or both. In sum, Plaintiffs argue Defendants are not entitled to claim attorney-client privilege over communications that do not request or convey legal advice between an attorney and client. Plaintiffs claim the privilege does not apply to Entry Nos. 15-18, 20, 21, 24, 25, 27, 32-34, 37, 52, 53, 66, 100, 101, 112, 127, 145, 164, 167-71, 174, 175, 177, 178, 183, 194, 197-199, 202-207, 210, 218, 220, 221, 222-24, 232, and 236-38.

---

[1] According to Defendants, they produced the following challenged documents (denoted by the entry number on the Sixth Log) with redactions as of February 3, 2023: Entry Nos. 15, 16, 17, 18, 20, 24, 25, 28, 32, 33, 34, 48, 50, 51, 52, 53, 112, 132, 133, 145, 177, 183, 202, 203, 204, 205, 206, 207, 218, 221, 232, 236, 237, and 238.

Plaintiffs also argue work-product protection does not apply to Entry Nos. 27, 28, 45, 48, 66, 100, 127, 132, 133, 145, 154, 164, 168, 169, 170, 183, 197, 198, 208, 220, 222, 223, 236, 237, and 238. They claim work-product protection is only afforded to attorney notes or mental impressions, or documents prepared in anticipation of litigation that is pending or reasonably foreseeable. Plaintiffs observe that most of the challenged entries were not authored, transmitted, or received by a lawyer, and all are dated at least a decade before the filing of Plaintiffs' Complaint and before the applicable wells were drilled. Plaintiffs further argue most of these entries describe discoverable facts.

And finally, Plaintiffs argue Defendants have waived any claim of privilege or protection over Entry Nos. 28, 40-42, 45, 47, 50, 51, 100, 112, 132, 133, 168, 169, 171, 174, 177, 197, and 198, due to the lack of sufficient explanation as to custodians, authors, dates of creation, subject matter, and other critical details that would enable Plaintiffs or the Court to reasonably assess the claimed privilege.

Defendants make several arguments in response, listed as follows: Plaintiffs' Motion is premised on outdated and inaccurate information because it inexplicably relies on the Fourth Log rather than the Sixth Log; Defendants have already produced a majority of the challenged documents, albeit with redactions; any Wyoming documents sought are not relevant given the denial of class certification; the challenged documents include or involve attorneys and contain "sufficient indicia of privilege;" communications that include facts are still privileged; the challenged

documents were prepared in anticipation of litigation affording them work-product protection; Plaintiffs cannot show they are entitled to the protected documents; and Plaintiffs' waiver argument is meritless. *See generally* Dkt. 158.

## B. Analysis

As an initial matter, the Court finds the documents in Defendants' Sixth Log relevant to the asserted claims and defenses, and proportional to the needs of the case.[2] Fed. R. Civ. P. 26(b)(1); *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-CV-02349-WJM-KMT, 2013 WL 1969264, at *6 (D. Colo. May 13, 2013) ("Privilege logs are only applicable when the responding party to a discovery request acknowledges that certain evidence is responsive to the request but the responder nonetheless withholds production because the evidence is protected by a recognized privilege.").

When a party withholds responsive information based on a claim of privilege or some other protection, the party must "expressly make the claim," and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). This is usually done with a privilege log. The purpose of a privilege log is to provide the court and the opposing party with enough information to meaningfully evaluate

---

[2] *See infra* n.8.

claims of privilege or other protection. *See Cabot v. Wal-Mart Stores, Inc.*, No. CIV 11-0260 JB/RHS, 2012 WL 592874, at *13 (D.N.M. Feb. 16, 2012); *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, No. 08-1204-WEB-KMH, 2009 WL 2913535, at *5 (D. Kan. Sept. 4, 2009).

When done correctly, "[p]roviding information pertinent to the applicability of the privilege or protection should reduce the need for *in camera* examination of the documents." Fed. R. Civ. P. 26 (1993 advisory committee notes). "Generally, a privilege log is adequate if it identifies with particularity the documents withheld, including their date of creation, author, title or caption, addressee and each recipient, and general nature or purpose for creation." *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1232 (D. Colo. 2010).

### 1. Defendants' Incomplete Privilege Log Entries and Waiver[3]

"[P]roduction of an inadequate privilege log may be deemed a waiver of the privilege asserted." *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 649 (D. Colo. 2004), *aff'd*, 2005 WL 8169547 (D. Colo. Aug. 18, 2005); *see also Chimney Rock Pub. Power Dist.*, 2013 WL 1969264, at *6 ("Failure to assert a privilege properly on a privilege log results in a waiver of the claim of privilege.") (citing cases under Colorado and federal law). Courts in this circuit have found waiver where, for

---

[3] Entry Nos. 28, 40-42, 45, 47, 50, 51, 100, 112, 132, 133, 168, 169, 171, 174, 177, 197, and 198. These include the entries the parties color coded in green on the Fourth and Sixth Logs.

example, a privilege log contained no information in the columns for author or recipient. *See High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 234024, at *15 (D. Kan. Jan. 25, 2012) (granting motion to compel), *on reconsideration in part*, 2012 WL 1580634 (D. Kan. May 4, 2012). Or, where a document was described on a privilege log as a "[c]onfidential draft referring to information gathered at the request of counsel for the purpose of providing legal advice regarding potential patent assignment," but the only identified recipient of the document was the "File." *Id.* at *16. Or also, where a privilege log contained insufficient descriptions to assist in evaluating the claims of privilege. *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 671, 683-84 (D. Colo. 2008) (adopting, in relevant part, the special master's recommendations of disclosure based on waiver for failure to submit a proper privilege log); *see also Emps. Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 775 (10th Cir. 2004) (noting the district court compelled a party to disclose documents because it found the privilege log inadequate to enable the court to determine whether the documents were privileged).

While some courts in this district have viewed it too harsh to declare the waiver of privilege as a sanction for an inadequate privilege log, this Court finds the circumstances of this case warrant a finding of waiver as to these categories of documents. *Cf. Carlson v. Colorado Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 289 (D. Colo. 2022) (concluding waiver was a disproportionate remedy for an inadequate privilege log). Defendants are now on their *sixth* iteration of their privilege log, and

at least the *third* iteration since September 2021 containing the 66 disputed documents. And yet, 19 of the 66 disputed entries still identify no recipient, no author, or both. *See* Dkt. 158-3 (Entry Nos. 28, 40-42, 45, 47, 50, 51, 100, 112, 132, 133, 168, 169, 171, 174, 177, 197, and 198). This is perplexing, for example, because in many instances where Defendants claim attorney-client privilege, the accompanying description is some variation that the document "analyzes legal title and ownership related to [SOA] with legal advice from outside counsel . . . [,]" but there is no indication of any recipient of the claimed legal advice. *Id.* (*see, e.g.,* Entry Nos. 40-42, 45, 47, 50, 51, 100, and 112); *High Point SARL*, 2012 WL 234024, at \*16 (granting motion to compel where only recipient of the purported legal advice described on the privilege log was the "file").

And the entries over which Defendants claim work product are no better. Four of those entries specify there is "no author" of the document. *See* Dkt. 158-3 (Entry Nos. 28, 100, 132, and 168). And five of those entries merely identify the author as "lkg339," "zei205," "sbn361," or "Shawn." *Id.* (Entry Nos. 45, 133, 169, 197, and 198). While Defendants included a "Cast List" to assist with review of the Sixth Log, that list does not identify the persons associated with these references, rendering them meaningless. Notably, in their Response, Defendants discuss Entry No. 45 and explain that "additional entries . . . establish [ ] that the document identified at Entry 45 was created by Marla Jones, Defendants' in-house counsel, and shared with Jeff Fiske, also in-house counsel. *See* Entry Nos. 544, 545, 546, and 547[.]" Dkt. 158 at

p.4. But if that's the case, Entry No. 45 should identify Ms. Jones as its author and Mr. Fiske as its recipient in the Sixth Log—but Entry No. 45 does not identify either.[4] Neither the Court nor Plaintiffs should have to hunt and peck through the Sixth Log and review the documents to determine how other entries somehow fill in the blanks for entries that omit critical information. As mentioned, Defendants have had three tries since September 2021 to supply complete privilege log entries and have failed each time.

Defendants do not explain why, after at least three attempts, these log entries still identify no recipients, no authors, or both. They merely argue that the Sixth Log adequately describes the basis for privilege, or that it produced some of these documents, and therefore, "Plaintiff's need only review the documents to see what they contain." Dkt. 158 at pp.3, 16. But the latter begs the question since Defendants redacted the few documents they did produce. The question before the Court is whether Defendants have properly claimed privilege for the material they redacted or the documents they withheld. The purpose of the privilege log is to assist Plaintiffs and this Court in evaluating the claimed privilege or protection without having to resort to an *in camera* review. As one court has explained, "[*i*]n camera procedures should be a rare procedure in discovery disputes. Such a procedure requires a great

---

[4] The entry does identify Marla Jones and Keith Crouch in the column titled "Attorney(s) Involved/Listed in Document," but this is another meaningless reference when no attorney or anyone else is identified as an author or recipient.

deal of a court's time and energy; the party asserting the privilege should provide the justification for withholding a document instead of handing over documents and waiting for the court to do their work for them." *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D. Kan. 1996). And this Court declines to complete an assignment for Defendants that they have had since September 2021 to do correctly.

Given the inadequacy of the Sixth Log for these entries, the Court exercises its discretion and declines to review them *in camera* to discern Defendants' claims of privilege. *See Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551-52 (10th Cir. 1995) ("Whether to conduct an *in camera* review is left to the sound discretion of the district court."); *Kovacs v. Hershey Co.*, No. 04-cv-01881-WYD-BNB, 2006 WL 2781591, at *11 (D. Colo. Sept. 26, 2006) (discussing the magistrate judge was not required to conduct an *in camera* review merely because privilege was raised). For these specific entries, the Court finds Plaintiffs have made an adequate showing that Defendants have waived any claimed privilege or protection, and therefore, the documents are ORDERED to be produced to Plaintiffs. *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert the privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made. . .. [T]hat such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege."); *Atteberry*, 221 F.R.D. at 649 (party failed to make an adequate showing to establish applicability of the attorney-

client privilege or work-product doctrine where there was no privilege log or other attempt to provide sufficient information to enable the plaintiffs or the court to evaluate the claimed protection).

### 2. Entries Claiming Attorney-Client Privilege[5]

State law governs issues of privilege in cases based on diversity jurisdiction. Fed. R. Evid. 501. In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009); Colo. Rev. Stat. § 13-90-107(1)(b). The privilege applies only to communications under circumstances giving rise to a reasonable expectation that they will be treated as confidential. *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). It includes information given to the attorney to enable them to render legal advice. *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000). But mere statements of fact are not protected by the attorney-client privilege. *People v. Trujillo*, 144 P.3d 539, 545 (Colo. 2006) (citing *Gordon*, 9 P.3d at 1123). The burden of establishing applicability of the attorney-client privilege is on the party claiming the privilege, and the burden of establishing a waiver of the privilege is on

---

[5] Entry Nos. 15-18, 20, 21, 24, 25, 27, 32-34, 37, 52, 53, 66, 100, 101, 112, 127, 145, 164, 167-171, 174, 175, 177, 178, 183, 194, 197-199, 202-207, 210, 218, 220, 221, 222-224, 232, and 236-238. These include the entries which the parties color coded in purple on the Fourth and Sixth Logs.

the party attempting to overcome the privilege. *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

In reviewing the Sixth Log, for those disputed entries over which Defendants claim the attorney-client privilege, most of those entries are complete, but some are not. For those that are complete, the Court has reviewed a sampling of the documents *in camera*, to include the redacted and unredacted versions of some of them (such as both versions of Entry Nos. 202-07, 221). *See Carlson v. Colorado Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 290 (D. Colo. 2022) (the decision to review documents *in camera* is in the sound discretion of the trial court and is not a substitute for submission of an adequate record supporting privilege claims).

Based on that review, the Court finds Defendants have met their burden to show the attorney-client privilege applies to this category of documents. These documents reflect Defendants' internal communications which either share or discuss legal advice which Defendants are attempting to implement, or which include or culminate in a request for legal advice. *See, e.g., Markley v. U.S. Bank Nat'l Ass'n*, No. 19-CV-01130-RM-NYW, 2020 WL 12602882, at *5 (D. Colo. Dec. 29, 2020) (finding, under federal privilege law, one category of documents protected under the attorney-client privilege because they reflected the transmission of attorney advice for the purpose of apprising non-lawyer personnel of legal advice given by in-house counsel, and another category properly protected because it reflected communications

made to assist in-house counsel in rendering advice to the client); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) ("Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer[.] It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected."); *Gordon*, 9 P.3d at 1123 (the attorney-client privilege applies "to matters communicated by or to the client in the course of gaining counsel").

That said, there is one exception to the Court's findings regarding this category of documents. Entry No. 178 is incomplete; it identifies no recipients. And while the log description states the document "includes contemporaneous stamp 'CONFIDENTIAL AND PRIVILEGED ATTORNEY CLIENT COMMUNICATION'[,]" in reality it contains no such contemporaneous stamp. Moreover, the document appears to be a draft of a form letter to Colorado surface owners who have one or more Surface Owner Agreements to inform them of the payment-calculation change under their SOAs. According to the Sixth Log, the letter was authored by Marla Jones, in-house counsel, with no recipients. The only privilege Defendants claim is the attorney-client privilege, but there is no indication the document was shared with any client because the privilege log identifies no recipients. Thus, not only is the log entry incomplete resulting in waiver (for the

reasons shared above), but review of the document itself simply does not bear out the claimed privilege. *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-cv-20905-RMW, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008). ("A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged."). Thus, Defendants have not met their burden to show the privilege applies to Entry No. 178, and this document is ORDERED to be produced. The remaining entries in this category,[6] however, need not be produced because the Court finds the attorney-client privilege applies.

### 3. Work-Product Protection[7]

"Unlike the attorney client privilege, the work[-]product [doctrine] is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refin. Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (cleaned up). To be subject to the work-product doctrine, the materials must have been "prepared in anticipation of litigation. It does not protect materials prepared in the 'ordinary course of business.'" *Weitzman v. Blazing Pedals, Inc.*, 151

---

[6] *Supra* n.4. To the extent any of these entries also claimed work-product protection, the Court does not analyze the work-product claim in light of its finding that the attorney-client privilege applies to these entries.

[7] Entry Nos. 48, 154, 183, and 208. Because this category of documents had some overlap with the other two categories (*i.e.*, incomplete entries and attorney-client privilege), these are the only remaining entries in this category after the Court's rulings on the other two categories.

F.R.D. 125, 126 (D. Colo. 1993) (citation omitted). Thus, to receive work-product protection, the party claiming protection must demonstrate the information at issue was prepared in anticipation of litigation or for trial. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010).

For Entry No. 154, the Sixth Log identifies both the attorney-client privilege and work product. The Court reviewed this document *in camera* and finds it conveys the advice of counsel pertaining to a specific well(s) over which Defendants reasonably anticipated litigation from a specific well owner. Thus, Defendants have met their burden to establish that both claimed protections apply to this entry.

For Entry No. 48, Defendants claim only work-product protection, and they produced this document to Plaintiffs with redactions. The Court has reviewed both versions of this document and finds the redacted material is indistinguishable from the unredacted material. In other words, while the Sixth Log claims the redacted material "includes a request for legal advice from company attorney regarding Surface Owner Agreement terms and legal advice from company attorney regarding Surface Owner Agreement terms[,]" none of these blanket claims are borne out by the Court's review. Rather, it appears Defendants have selectively redacted sentences from this document without a credible basis in work product. The redacted material neither reflects the mental impressions of counsel, nor is it evident that the redacted portions were somehow prepared in anticipation of litigation to the exclusion of the

unredacted portions. Defendants have not carried their burden to show Entry No. 48 qualifies for work-product protection.

For Entry No. 208, Defendants claim both the attorney-client privilege and work-product protection. Entry No. 208 is identical to Entry No. 178, only this draft form letter is directed to Wyoming surface owners.[8] The Court finds the attorney-client privilege does not apply to this document for the same reasons the Court found it does not apply to Entry No. 178. The Court also finds no work-product protection applies to this document. This draft form letter is directed to third parties, *i.e.*, Wyoming surface owners, to notify them of changes to their SOA payments. It is apparent to the Court that this draft letter was prepared in Defendants' ordinary course of business and not in anticipation of litigation; whether or not litigation would ensue, Defendants had to inform these surface owners of the change as a business matter and in any event. *See* Fed R Civ. P. 26(b)(3), 1970 advisory committee notes ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under

---

[8] The Court finds that the documents in dispute which involve Wyoming surface owners are relevant and proportional to the claims in this case because the SOAs, whether involving Wyoming or Colorado surface owners, contain materially identical payment provisions, and they were all subject to the same calculation change at issue in this case. This is not to say that any manner of documents or circumstances involving Wyoming surface owners is relevant and proportional to the needs of this case. It is only to say that the documents which are the subject of this discovery dispute are relevant and proportional in this Court's view. Whether these documents are admissible at trial is a different question for the presiding district judge.

the qualified immunity provided by this subdivision."); *W. Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 9 (D.D.C. 1991) ("The privilege does not shield from discovery documents that were 'prepared in the regular course of compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation.'") (citation omitted).

And finally, for Entry No. 183, Defendants claim both attorney-client privilege and work product. Defendants have not met their burden to show this document benefits from either protection. The bottom portion of this email string is a message from Lynn Schardein to Hank Wood[9] with other Anadarko employees copied. It is an internal communication which summarizes a report from Joelle Barnett and Tessa Dean, both non-lawyers, concerning the identification of possible SOA concerns in the Wamsutter area. While the Sixth Log claims this document "summarizes legal advice," the document instead appears to report and summarize the results of Ms. Barnett's and Ms. Dean's factual investigation into wells in the Wamsutter area and the resulting concerns they identified. The email does not reference any attorneys or legal advice. Nor does it express an intent to seek legal advice. The Court's review of the document further suggests the communication was prepared and sent in the ordinary course of business. *See, e.g., Bernardi v. Cmty. Hosp. Ass'n*, 443 P.2d 708,

---

[9] The "Cast List" Defendants provided does not include Mr. Wood. The Court understands Mr. Wood to be another Anadarko employee since the Sixth Log does not indicate any attorneys were involved or identified in this communication.

715 (Colo. 1968) (finding the attorney-client privilege did not apply and stating, "[i]t well may be that the practice of making an incident report resulted from the advice of counsel, but it seems rather plain that these incident reports were not prepared for the attorney. Rather, they were prepared for certain administrative officials . . . and they were available to the . . . attorney if he wished to see them."). For these reasons, Defendants have not met their burden to show Entry No. 183 is attorney-client privileged or work product prepared in anticipation of litigation. This includes the subsequent forwarding of the email from Ms. Dean to Ms. Schardein at the top of the page, and the attachments to the email.

* * *

For the reasons shared above, Plaintiffs' Motion to Compel is **GRANTED IN PART and DENIED IN PART**. It is **ORDERED** that Defendants produce the following documents to Plaintiffs, unredacted, within seven days of the date of this Order: **Entry Nos. 28, 40-42, 45, 47, 48, 50, 51, 100, 112, 132, 133, 168, 169, 171, 174, 177, 178, 183, 197, 198, and 208**.

DATED:  August 8, 2023

BY THE COURT:

_____

S. Kato Crews
United States Magistrate Judge