IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-2352-WJM-TPO

BOX ELDER KIDS, LLC,
C C OPEN A, LLC, and
GUEST FAMILY TRUST, by its Trustee CONSTANCE F. GUEST

    Plaintiffs,

v.

ANADARKO E & P ONSHORE, LLC,
ANADARKO LAND CORPORATION, and
KERR-MCGEE OIL AND GAS ONSHORE, LP,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION *IN LIMINE***

---

Defendants Anadarko E & P Onshore, LLC, Anadarko Land Corporation, and Kerr-McGee Oil and Gas Onshore, LP ("KMOG") (collectively, "Defendants") filed a Motion in Limine, seeking to exclude certain evidence sought to be admitted by Plaintiffs Box Elder Kids, LLC, C C Guest A, LLC, and the Guest Family Trust, by its Trustee Constance F. Guest (collectively, "Plaintiffs").  (ECF No. 239.)  Plaintiffs filed a response.  (ECF No. 261.)

The Court presumes the parties' familiarity with the facts of the case and its prior orders.  (*See, e.g.*, ECF No. 225.)  For the following reasons, Defendants' Motion in Limine is granted in part and denied in part.

**I. APPLICABLE LAW**

Motions *in limine* enable the Court "to rule in advance of trial on the relevance of

certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Michael v. Rocky Mountain Festivals, Inc.*, 2019 WL 10011881, at *1 (D. Colo. July 19, 2019) (citation omitted); *Ward v. Nat'l Credit Sys., Inc.*, 2024 WL 2846609, at *3 (D. Colo. June 5, 2024) ("Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the Parties as they prepare their cases."). Pretrial rulings, however, "are often better left until trial when the Court can assess the question and evidence presented." *Colorado Montana Wyoming State Area Conf. of NAACP v. Smith*, 2024 WL 2939163, at *2 (D. Colo. June 11, 2024) (citing *Vanderheyden v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 4131439, at *2 (D. Colo. Sept. 12, 2022)).

Whether to admit or exclude evidence is a decision that "lies within the sound discretion of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994). The moving party has the burden of establishing that the "evidence is inadmissible on any relevant ground." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (citation omitted). Accordingly, the Court may deny a motion *in limine* if the movant fails to set out, with the necessary specificity, the evidence it wishes to be excluded. *Id.* Denial of a motion *in limine*, however, does not mean that the evidence will automatically be admitted at trial; rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion," upon a party's timely objection. *Id.* (quotation omitted).

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid.

2

401. Relevant evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

## II. ANALYSIS

Defendants move to exclude (1) a 2015 SEC Annual Report in which Defendants' parent company, Anadarko Petroleum Corporation, disclosed that $106 million in operating expenses were "partially offset by lower payments to surface owners of $20 million" and (2) evidence relating to Plaintiff Constance Guest's health. (ECF No. 239 at 3, 6.) The Court grants the first request but denies the second.

### 1. 2015 SEC Annual Report

The 2015 SEC Annual Report reads, in pertinent part, as follows:

> ***Other Operating Expense 2015 vs. 2014*** Other operating expenses increased by $106 million primarily due to an increase in legal accruals of $97 million and a $48 million expense in 2015 for the early termination of a drilling rig, *partially offset by lower payments to surface owners of $20 million.*

(*Id.* at 3) (emphasis added). Plaintiffs contend that this paragraph is relevant because it "shows how the modification in the SOA payment practice lined Anadarko's pocket." (ECF No. 261 at 2.) Defendants counter that the paragraph "does not support this contention, nor is it relevant in any way to the Plaintiffs' claims." (ECF No. 239 at 3.)

The Court will exclude this evidence under Rules 401 and 403. This case boils down to whether Defendants breached the pertinent surface owner agreements ("SOAs") by adjusting their payment methodology based on a different interpretation of

3

the ambiguous portions of Section 2 in 2010 in seeming response to the advent of horizontal drilling around that time.  But why Defendants changed their interpretation of Section 2's ambiguous terms—*i.e.*, their motive for doing so—has little to no tendency to make a fact of consequence more or less probable.  See Fed. R. Evid. 402.  That is, Defendants' reasons for changing their payment methodology do not bear on whether that methodology comports with Section 2's terms.  Nor does it bear on any of Defendants' various defenses, including whether their 2010 Letter constituted a repudiation, thereby triggering the six-year statute of limitations.

Even assuming the 2015 SEC Annual Report is relevant to one of these issues, however, in the Court's view, its probative value is substantially outweighed by the risk of unfair prejudice.  First, Plaintiffs' admitted reason for seeking to present this evidence is to suggest to the jury that Defendants are profit-driven.  (ECF No. 261 at 2.)  While that may be true, this purpose would surely increase the chances that the jury might render a verdict based on emotion or bias, which would be improper.[1]  *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (citing Fed. R. Evid. 403, advisory committee note); *see also Thompson v. Ford Motor Co.*, 2025 WL 370431, at *27 (D. Colo. Feb. 3, 2025) ("[J]urors are not an audience to entertain and impassion—they are fact finders charged with uncovering the truth and delivering justice.").

Second, admitting the 2015 SEC Annual Report risks wasting time on a peripheral issue.  *See United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)

---

[1] The Court notes that Plaintiffs do not need the 2015 SEC Annual Report to provide the jury with context for why Defendants changed their interpretation of Section 2 in 2010.  It is a reasonable (if not obvious) inference that Defendants did so at least in part because they wanted to pay landowners less money.

4

(affirming district court's evidentiary ruling where the evidence would have caused a "side trial"). Indeed, the parties already debate at length in their papers whether Defendants' operating expenses were offset by reduced payments to surface owners in Colorado *vis-à-vis* any of the other locations in which Defendants pay surface owners pursuant to similar SOAs. (*See* ECF No. 239 at 3 (claiming that the 2015 SEC Annual Report applies to all payments made to all surface owners in "the southern United States, the Appalachian basin, Alaska, the deepwater Gulf of Mexico . . . Algeria, Ghana, Mozambique, Colombia, Côte d'Ivoire, New Zealand, Kenya, and other countries"); *see also* ECF No. 261 at 2 ("Apparently to Anadarko, that statement in the Annual Report could now mean something else. Fine. If Anadarko can prove there are other year-over-year surface payments that it pays somewhere else that went down by millions of dollars, then we would have a disputed fact issue.").) Simply put, litigating this "disputed fact issue" would not be a good use of anyone's time. (ECF No. 261 at 2.)

For these reasons, this portion of Defendants' Motion will be granted, and Plaintiffs may not present the 2015 SEC Annual Report at trial.

## 2. Constance Guest's Health

Defendants move "to exclude any testimony or evidence regarding why Plaintiff Constance Guest is unable to attend trial in person." (ECF No. 239 at 6.) It appears to be undisputed that Guest cannot attend trial in person because she "had a stroke in late 2024." (*Id.*) Defendants assert that "[t]he reasons for Ms. Guest's absence from trial are not relevant to any claim or defense in the case, and evidence of her health condition is prejudicial to Defendants due to the likelihood of garnering sympathy from the jury." (*Id.*)

5

The Court agrees with Plaintiffs, however, that precluding them from offering any explanation for Guest's physical absence might invite jurors to speculate as to why she did not attend "her own trial." (ECF No. 261 at 3.) To avoid such speculation, the Court will permit Plaintiffs to briefly and simply explain that Guest recently suffered a significant health issue in late 2024 and, as a consequence, cannot attend the trial in person. Nothing more will be permitted, including the fact that the health issue was a stroke. The Court sees little risk that such a limited explanation will unfairly prejudice Defendants, as there is no indication or evidence that Defendants' actions or this lawsuit caused her illness. This portion of the Motion is therefore denied in part.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* (ECF No. 239) is GRANTED IN PART AND DENIED IN PART as set forth above.

Dated this 21st day of February, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

6