IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-2352-WJM-TPO

BOX ELDER KIDS, LLC,
C C OPEN A, LLC, and
GUEST FAMILY TRUST, by its Trustee CONSTANCE F. GUEST

    Plaintiffs,

v.

ANADARKO E & P ONSHORE, LLC,
ANADARKO LAND CORPORATION, and
KERR-MCGEE OIL AND GAS ONSHORE, LP,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION *IN LIMINE*

Plaintiffs Box Elder Kids, LLC, C C Guest A, LLC, and the Guest Family Trust, by its Trustee Constance F. Guest (collectively, "Plaintiffs") filed a Motion *in Limine* to exclude certain evidence sought to be admitted by Defendants Anadarko E & P Onshore, LLC, Anadarko Land Corporation, and Kerr-McGee Oil and Gas Onshore, LP ("KMOG") (collectively, "Defendants"). (ECF No. 242.) Defendants filed a response. (ECF No. 255.)

The Court presumes the parties' familiarity with the facts of the case and its prior orders. (*See, e.g.*, ECF No. 225.) For the following reasons, Plaintiffs' Motion *in Limine* is denied.

### I. APPLICABLE LAW

Motions *in limine* enable the Court "to rule in advance of trial on the relevance of

certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Michael v. Rocky Mountain Festivals, Inc.*, 2019 WL 10011881, at *1 (D. Colo. July 19, 2019) (citation omitted); *Ward v. Nat'l Credit Sys., Inc.*, 2024 WL 2846609, at *3 (D. Colo. June 5, 2024) ("Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the Parties as they prepare their cases."). Pretrial rulings, however, "are often better left until trial when the Court can assess the question and evidence presented." *Colorado Montana Wyoming State Area Conf. of NAACP v. Smith*, 2024 WL 2939163, at *2 (D. Colo. June 11, 2024) (citing *Vanderheyden v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 4131439, at *2 (D. Colo. Sept. 12, 2022)).

Whether to admit or exclude evidence is a decision that "lies within the sound discretion of the trial court." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994). The moving party has the burden of establishing that the "evidence is inadmissible on any relevant ground." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (citation omitted). Accordingly, the Court may deny a motion *in limine* if the movant fails to set out, with the necessary specificity, the evidence it wishes to be excluded. *Id.* Denial of a motion *in limine*, however, does not mean that the evidence will automatically be admitted at trial; rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion," upon a party's timely objection. *Id.* (quotation omitted).

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid.

401.  Relevant evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

## II. ANALYSIS

Plaintiffs move to exclude any evidence "about the meaning or usage of technical terms in the contracts at issue because none of the Plaintiffs have experience in or technical knowledge of the oil and gas industry."  (ECF No. 242 at 1.)  In Plaintiffs' view, because "there is no evidence that, at the time the SOAs were entered into, any of the Plaintiffs (or their predecessors) had any experience or knowledge in the oil and gas industry," the jury must interpret Section 2's ambiguous terms by considering only the terms' "ordinary meaning."  (Id. at 3, 4.)  The Court declines to exclude such evidence, at least at this juncture.

As explained in greater detail elsewhere, Section 2 of the pertinent surface owner agreements ("SOAs") is ambiguous and "must therefore be interpreted by the trier of fact after considering competent evidence bearing upon the construction given to the instrument by the parties themselves, by their acts and conduct in its performance." (ECF No. 115 at 10–11 (quoting *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irr. Co.*, 109 P.3d 969, 974 (Colo. 2005) (en banc)).)  As such, the jury may consider extrinsic evidence to ascertain Section 2's meaning and the effect of its ambiguous provisions. (*Id.*)  Plaintiffs' contrary assertion that the jury should be restricted to construe Section 2's ambiguous provisions by examining its "ordinary meaning" and nothing else inverts

3

the fundamental principle that, where a document is ambiguous, the factfinder may look beyond just its plain language to discern its meaning.  Cf. Larson v. Larson, 687 F. App'x 695, 703 (10th Cir. 2017) ("[I]f the contract language is unambiguous, we determine 'the parties' intent from the words of the agreement as they are expressed within the four corners of the agreement' . . . .").

Here, such extrinsic evidence includes the technical meaning of these terms as used in the oil and gas field.  See Dunning v. Jefferson Cnty. Sch. Dist. R-1, 2022 WL 3212925, at *3 (D. Colo. Aug. 9, 2022) ("Courts may consider parol evidence if terms are ambiguous."); see also McGee v. Lucas, 2017 WL 4856859, at *3 (D. Colo. Aug. 4, 2017) ("[E]xtrinsic evidence may be considered to assist the trier of fact in determining what the parties' intentions were at the time an agreement was made."); Level 3 Commc'ns, LLC v. Liebert Corp., 535 F.3d 1146, 1155 (10th Cir. 2008) ("This extrinsic evidence may include *any pertinent circumstances attendant upon the transaction*, including the conduct of the parties under the agreement.") (emphasis added) (citation omitted); Interstate Med. Licensure Compact Comm'n v. Bowling, 113 F.4th 1266, 1281 (10th Cir. 2024) ("While Plaintiff may present extrinsic evidence to the trier of fact in support of its resolution of the ambiguity, it is under no obligation to do so.") (citation omitted).

Indeed, "[w]hen parties are engaged in a trade or technical field, '[u]nless a different intention is manifested . . . technical terms and words of art are given their technical meaning when used in a transaction within their technical field.'"  People ex rel. Rein v. Jacobs, 465 P.3d 1, 11 (Colo. 2020) (quoting Bledsoe Land Co. v. Forest Oil Corp., 277 P.3d 838, 843 (Colo. App. 2011) (citation omitted)); see also Flying J Inc. v.

4

*Comdata Network, Inc.*, 405 F.3d 821, 833–34 (10th Cir. 2005) (considering the "specialized meaning of 'cleared' in the financial industry" when interpreting a contract between providers of financial services); *Washington Cnty. Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 153 (Colo. 2005) ("A well-established rule of statutory construction is that '[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.'"); Restatement (Second) of Contracts § 202(3)(b) (providing that "technical terms and words of art are given their technical meaning when used in a transaction within their technical field").

Pursuant to these principles, Defendants will be permitted to present evidence as to what technical terms such as "unitization," "allocation," and "produced from" mean. (ECF No. 242 at 2.) This conclusion comports with the proceedings that took place in *Bledsoe Land Co.* There, the trial court found that the meaning of the word "completion" in an oil and gas lease was ambiguous and thereafter received "extensive expert testimony" at trial to discern its meaning. 277 P.3d at 844. A division of the Colorado Court of Appeals ultimately reversed the trial court's determination that the word "completion" was ambiguous, but the division did not do so because the trial court received evidence as to the technical meaning of this term in the oil and gas industry. On the contrary, the division concluded that the term was unambiguous *based on* the evidence pertaining to the term's technical meaning. *Id.*

The Court's ruling does not offend the principle "that evidence of industry standards may be binding only if the original contracting parties had knowledge of such standards at the time of contracting," as Plaintiffs posit. (ECF No. 227 at 14 (citing

5

*Garman v. Conoco, Inc.*, 886 P.2d 652, 660 (Colo. 1994) ("Before one can be bound by industry custom he must know of it or it must be so universal and well-established that he is presumed to have knowledge of its existence.") (citation omitted)).)  This is so for three reasons.

First, the Court agrees with Defendants that evidence relating to industry custom and evidence relating to technical terms are not one and the same.  *See* Rest. 2d. § 202(3) and (5) (addressing "technical terms and words of art" separately from "course of performance, course of dealing, or usage of trade").  How participants in the oil and gas industry typically conduct business is conceptually distinct from what a technical term or term or art means in a technical field.  Hence, the presentation of evidence regarding the meaning of technical terms does not violate the principle that industry custom can be binding only on those who are aware of it.  *Garman,* 886 P.2d at 660.

Second, Defendants argue that the technical meaning of the terms "unitization," "allocation," and "produced from" are universal and well-established in the oil and gas filed.  (*See* ECF No. 255 at 6 (claiming that these terms "have been regularly and consistently used in the oil and gas industry for decades if not centuries").)  Plaintiffs do not address this language from the *Garman* decision.  (*See generally* ECF No. 242.)

Third, as explained in its prior order, the Court has already found that whether Plaintiffs were versed in the oil and gas field is a disputed issue of fact.  (ECF No. 225 at 20 ("[W]hether these original parties had such industry experience, and thus, whether evidence of industry standards and customs is relevant, is a question of fact, not of law.").)  Defendants point to evidence that Zelda Shaklee had experience executing oil

6

and gas deeds and easements prior to signing the 1989 SOA.[1]  (ECF No. 255 at 5–6.) Plaintiffs do not rebut this evidence in their Motion *in Limine*; instead, they stress that Shaklee's *children* are not savvy in the oil and gas field.  (ECF No. 242 at 3.)  This point is inapposite, however, because it is the original contracting parties' familiarity that potentially matters.  *See Bd. of Cnty. Commissioners of Boulder Cnty. v. Crestone Peak Res. Operating LLC*, 538 P.3d 745, 753 (Colo. 2023) (focusing on what "the original parties intended").

In sum, the Court concludes, at this juncture, that Defendants shall be permitted to present evidence bearing on the meaning of the technical terms included in Section 2 of the SOAs.  Plaintiffs, for their part, shall be permitted to present evidence supporting their theory that the original contracting parties did not intend for these technical terms to control.  Plaintiffs can strongly (in the Court's view) support this theory by pointing to the course of dealings between the parties from 1973 through 2010, during which time Defendants payment methodology allegedly comported with the well spot method. *Level 3 Commc'ns, LLC*, 535 F.3d at 1155 (noting that "[c]ourts in Colorado 'have found the conduct of the parties before the controversy arose to be a reliable test of their interpretation of the agreement'") (citation omitted); *Dunning*, 2022 WL 3212925, at *3 ("The parties' conduct before the controversy arose may also be examined to interpret the term.").

---

[1] Whether Constance Guest was versed in the oil and gas industry is doubtful given the evidence cited by Defendants.  (ECF No. 255 at 6 (merely stating that Guest was advised by an attorney at the time the SOA was drafted).)  The Court abstains, however, from rendering a definitive finding on this matter at this time.  *See Colorado Montana Wyoming State Area Conf. of NAACP*, 2024 WL 2939163, at *2 (pretrial rulings "are often better left until trial when the Court can assess the question and evidence presented")

As always, however, the Court emphasizes that it "may alter its limine ruling based on developments at trial or on its sound judicial discretion," upon a party's timely objection. *Pinon Sun Condo. Ass'n, Inc.*, 2020 WL 1452166, at *3.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion *in Limine* (ECF No. 242) is DENIED.

Dated this 21st day of February, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge